RECEIVED

FEB 20 2026

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Alexander von Brandenfels, )
   Plaintiff, )
) Case No.: 26-cv-1559-ECT/DTS
v. )
)
LTL LED, LLC, )
d/b/a WOLF RIVER ELECTRIC )
   Defendant. ) Demand for jury trial: No
)

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF UNDER THE TELEPHONE CONSUMER PROTECTION ACT

### INTRODUCTION

1. Plaintiff alleges the following upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief.

### JURISDICTION AND VENUE

2. The Court has jurisdiction over the Telephone Consumer Protection Act claims under 28 U.S.C. §1331 because this complaint arises under laws of the United States.

Complaint: Brandenfels v. LTL LED, LLC



1

3. Venue is proper because Defendant does business in and solicits customers in this district, and because a substantial part of the events giving rise to these claims occurred here.

## PARTIES

4. Alex von Brandenfels is a natural person and resident of Minneapolis, Minnesota.

5. LTL LED, LLC is a construction and solar installation company in Minnesota doing business as "Wolf River Electric". It conducts business in Minnesota, Wisconsin, and Iowa. Its principal executive office address is 101 ISANTI PARKWAY NE, STE G, ISANTI, MN 55040.

## THE TELEPHONE CONSUMER PROTECTION ACT (TCPA) AND RELATED REGULATIONS AND CASE LAW

6. The TCPA, 47 U.S.C. § 227 *et seq.* (1991), is a law regulating telemarketing and the use of auto-dialing technology. It was enacted in response to increasing abuse of consumers' telephone systems by businesses.

7. 47 U.S.C. § 227 (b) prohibits making certain kinds of phone calls. Specifically relevant to this complaint, 47 U.S.C. § 227 (b)(1)(A)(iii)

prohibits making a call to a cellular line using an artificial or prerecorded voice.

8. 47 U.S.C. § 227 (b)(3) grants a private right of action to those who receive telephone calls in violation of subsection (b). Such a person is entitled to $500 in damages per violation, and these damages may be increased by up to 3 times, at the Court's discretion, if the defendant acted "knowing[ly] or willful[ly]" in violation of the law. Such a person may at the same time also request injunctive relief against future violations.

9. 47 U.S.C. § 227 (c) prescribes that the Federal Communications Commission (FCC) shall issue regulations implementing the TCPA, and gives the FCC the power to establish a national database of "telephone numbers of residential subscribers who object to receiving telephone solicitations".

10. The "National Do Not Call Registry" (www.donotcall.gov) is the FCC's database of residential phone numbers who object to receiving telephone solicitations, as authorized by the above.

11. 47 CFR § 64.1200 ("Restrictions on Telemarketing, Telephone Solicitation, and Facsimile Advertising - Delivery Restrictions", 2003), is a set of FCC regulations implementing the TCPA, as authorized by the above.

12. 47 CFR 64.1200 (c)(2) forbids making telephone solicitations to residential phone subscribers who have listed their number on the National Do Not Call Registry.

13. 47 CFR 64.1200 (e) specifies that 47 CFR 64.1200 (c)(2) also applies to cell phones, and not just residential landlines.

14. 47 U.S.C. § 227 (c)(5) grants a private right of action to those who receive telephone calls in violation of the FCC regulations authorized under subsection (c). Such a person is entitled to $500 in damages per violation, and these damages may be increased by up to 3 times, at the Court's discretion, if the defendant acted "knowing[ly] or willful[ly]" in violation of the law. Such a person may at the same time also request injunctive relief against future violations.

15. The private rights of action granted by 47 U.S.C. § 227 (b)(3) and 47 U.S.C. § 227 (c)(5) are two distinct causes of action. Recovering damages under both 47 U.S.C. § 227 (b)(3) and 47 U.S.C. § 227 (c)(5) for the same call is permitted, and does not constitute double recovery. See e.g. *Drew v. Lexington Consumer Advocacy, LLC*, Case No. 16-cv-00200-SBA, Doc. No. 24 at *23 (N.D. Cal. Apr. 18, 2016).

16. The FCC has declared that restrictions on placing "calls" to phones also apply to sending text messages. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd 14014, 14115, para. 165 (2003).

## FACTUAL ALLEGATIONS: BACKGROUND

17. In September 2023, Plaintiff previously filed a complaint against Defendant in this District, case no. 23-cv-2813 (KMM/ECW), concerning the 2023 Telephone Consumer Protection Act violations alleged in the present complaint.

18. In December 2023, Plaintiff voluntarily dismissed the previous complaint under F.R.C.P 41(a)(1)(A)(i). The dismissal was without prejudice.

## FACTUAL ALLEGATIONS: DEFENDANT'S TEXTS AND CALLS TO PLAINTIFF

19. On August 28, 2023, at 11:01 AM, Plaintiff received a long text message, originating from (218) 292-692, at his personal cell phone number ending in 2205. The message stated that it was from Wolf River Electric, stated that they were "checking in on your previous inquiry about solar for your home", advertised a promotional discount they were running on solar installations, and asked to connect Plaintiff with one of their "Solar Advisors".

Complaint: Brandenfels v. LTL LED, LLC                                         5

20. That same day, at 3:13 PM and 9:45 PM, Plaintiff received two more text messages from the same number, following up on the original message, saying "Please let me know when you get a chance" and "Still looking to learn more about your solar options?"

21. The aforementioned text messages were attempts by Defendant to sell its services to Plaintiff.

22. On November 8, 2023, Defendant called Plaintiff from 651-560-3044.

23. On May 29, 2024, Defendant called Plaintiff from 763-401-8252.

24. On June 19, 2024, Defendant called Plaintiff from 612-268-1784.

25. On August 16, 2024, Defendant called Plaintiff from 952-234-5388.

26. During each of the four aforementioned calls (collectively, "the Calls"), when Plaintiff answered the phone and found that it was a salesperson from Wolf River Electric, Plaintiff told the salesperson that he had filed an anti-telemarketing lawsuit against Wolf River Electric, and that they shouldn't call him.

27. On May 29, 2024, Plaintiff emailed attorney Christopher W. Boline (counsel for Defendant in the 2023 lawsuit), informing him of his client's November

8 and May 29 telemarketing calls to Plaintiff, stating "both of these calls violate the TCPA".

28. On May 29, 2024, Mr. Boline replied to Plaintiff's email, stating "I will discuss with my client and get back to you".

29. Mr. Boline never got back to Plaintiff.

30. On June 19, 2024, Plaintiff sent another email to Mr. Boline, informing him that his client had made another telemarketing call to Plaintiff that day.

31. On August 16, 2024, Plaintiff sent another email to Mr. Boline, informing him that his client had made another telemarketing call to Plaintiff that day.

32. After May 29, 2024, Plaintiff never received another reply from Mr. Boline.

33. During each of the Calls, Plaintiff noticed that while the salesperson *seemed* to start speaking immediately, the salesperson subsequently seemed to have no awareness of what Plaintiff said in the first few seconds of the call. The calls all went something like the following:

   a. Plaintiff answered "hello?"

   b. Plaintiff heard a voice on the line say something to the effect of "This is Wolf River Electric calling about your solar inquiry".

    c. Plaintiff responded with something to the effect of "I filed an anti-telemarketing lawsuit against your company; you shouldn't call me".

    d. Instead of showing awareness of what Plaintiff had said, the voice on the other end of the line responded with a continuation of the sales pitch.

    e. Plaintiff repeated himself.

    f. The voice on the other end of the line showed actual awareness of what Plaintiff had said, and apologized.

    g. Plaintiff or the caller ended the call.

34. The voice at the beginning of each of the Calls was artificial or prerecorded, before switching over to a live salesperson.

35. On information and belief: Defendant has a financial incentive to keep each of its salespeople talking on the phone as much as possible, and waiting for phones to ring as little as possible. Plaintiff is aware of telemarketing software that offers "multi-dialing" or "parallel dialing" capabilities, which allows telemarketers to call several phone numbers at the same time, and then connects a salesperson to a specific call only when someone answers

Complaint: Brandenfels v. LTL LED, LLC                                                                                                       8

the phone, thus reducing the time salespeople spend waiting for calls to be answered. However, such software introduces a delay between when a recipient answers the call, and when a salesperson is actually connected to the call. To cover this gap when a human salesperson has yet to join the call, such software can be configured to play a message on the call using an artificial or prerecorded voice. Defendant used such software when making the Calls to Plaintiff, and the reason why the caller didn't seem to hear Plaintiff in the first few seconds of the calls is because a human salesperson hadn't been connected yet.

36. At the times of the aforementioned calls and text messages, Plaintiff and Defendant didn't have an established business relationship, as defined by 47 CFR § 64.1200 (f)(5), because Plaintiff never made any purchases from Defendant, and hadn't made any inquiry about Defendant's products or services within the three months preceding the calls or texts.

37. Plaintiff never gave Defendant his prior express written consent to receive the aforementioned calls or text messages, as defined by 47 CFR § 64.1200 (f)(9).

38. At the times of the aforementioned calls and text messages, Defendant didn't maintain "a written policy, available upon demand, for maintaining a do-not-call list".

39. At the times of the aforementioned calls and text messages, Defendant didn't consistently train its personnel engaged in telemarketing in the existence and use of a do-not-call list.

40. During the time period between its first text and its last call to Plaintiff, Defendant failed to maintain a do-not-call list of subscribers who requested not to receive telemarketing from Defendant; or alternatively, if it did maintain such a list, it failed to reliably place subscribers on that list at the time when they made such a request.

41. Plaintiff's phone number ending in 2205, at which he received the calls and text messages at issue, has been registered in the National Do Not Call Registry since July 29, 2016.

42. In making the calls and texts to Plaintiff, Defendant disrupted Plaintiff's privacy and annoyed him - exactly the kinds of injuries that the Telephone Consumer Protection Act and the National Do Not Call Registry are intended to prevent.

## FACTUAL ALLEGATIONS: DEFENDANTS' KNOWING OR WILLFUL ACTIONS

43. Prior to August 31, 2023, Defendants were aware of the existence of the Telephone Consumer Protection Act and/or the National Do Not Call Registry.

44. In 2020, 241 million Americans had their phone numbers registered on the National Do Not Call Registry, representing 73% of the US population.

45. The existence of the National Do Not Call Registry is common knowledge.

46. Prior to August 31, 2023, at least one executive of LTL LED, LLC, or at least one person holding a management position there whose responsibilities include sales and marketing, placed their phone number on the National Do Not Call Registry, thereby demonstrating an awareness of its existence.

47. Defendant doesn't subscribe to the National Do Not Call Registry.

48. Defendant makes no attempts to avoid initiating marketing texts or phone calls to phone numbers on the National Do Not Call Registry.

49. Defendant doesn't train its employees not to initiate marketing texts or phone calls to phone numbers on the National Do Not Call Registry.

50. At the time of each of Defendant's calls and text messages to Plaintiff at issue in this complaint, Defendant was aware that Plaintiff had not submitted an inquiry to Defendant nor requested to be contacted by Defendant within the three months preceding such call or text.

51. Defendant willfully made the calls and sent the text messages to Plaintiff, without confirming whether Plaintiff's phone number was on the National Do Not Call Registry, and despite Defendant's awareness of the existence of that Registry.

52. At the time of each of Defendant's calls and text messages to Plaintiff at issue in this complaint, Defendant knew that it had not instituted adequate procedures for maintaining a list of persons who request not to receive telemarketing from Defendant.

53. All of the Calls to Plaintiff occurred after Defendant had been served a copy of Plaintiff's previous Telephone Consumer Protection Act complaint against Defendant.

54. At the time of making each of the Calls to Plaintiff, Defendant was *specifically* aware that Plaintiff had demanded not to receive any more telemarketing from Defendant.

55. At the time of making each of the Calls to Plaintiff, Defendant was *specifically* aware that Plaintiff's phone number, which Defendant was calling, was on the National Do Not Call Registry, because Plaintiff had informed Defendant of such.

## COUNT 1: FCC REGULATION VIOLATIONS, 47 CFR 64.1200 (c) and (d)

56. Plaintiff incorporates by reference all of the paragraphs in the above "FACTUAL ALLEGATIONS" sections as though fully stated herein.

57. The above-alleged calls and text messages by Defendant each violated 47 CFR 64.1200 (c)(2), because the calls were intended to encourage the purchase of Defendant's services, and Plaintiff's cell phone number is on the Do Not Call Registry.

58. The above-alleged calls and text messages by Defendant each violated 47 CFR 64.1200 (d), because:

    a. Defendant failed to maintain a written do-not-call list policy as specified by 47 CFR 64.1200 (d)(1),

    b. Defendant failed to provide do-not-call list training to telemarketing personnel as specified by 47 CFR 64.1200 (d)(2),

    c. Defendant failed to record phone subscribers in a do-not-call list when requested, or failed to do so "at the time the request [was] made", in violation of 47 CFR 64.1200 (d)(3),

    d. and/or Defendant failed to maintain a do-not-call list, in violation of 47 CFR 64.1200 (d)(4).

59. Because each call and text violated one or more of the "regulations prescribed under [47 U.S.C. § 227 (c)]", Plaintiff is entitled under 47 U.S.C. § 227 (c)(5) to $500 from Defendant for each violation (3 texts + 4 calls), for a total of $3,500.

60. Defendant's actions should be considered "knowing" or "willful" for the purposes of 47 U.S.C. § 227 (c)(5), and thus the damages should be trebled by the Court, to $10,500.

## COUNT 2: ARTIFICIAL/PRERECORDED VOICE VIOLATIONS, 47 U.S.C. § 227 (b)(1)(A)(iii)

61. Plaintiff incorporates by reference all of the paragraphs in the above "FACTUAL ALLEGATIONS" sections as though fully stated herein.

62. Each of the Calls violated 47 U.S.C. § 227 (b)(1)(A)(iii), because they used an artificial or prerecorded voice and were placed to a cell phone.

63. Pursuant to 47 U.S.C. § 227 (b)(3), Plaintiff is entitled to $500 from Defendant for each violation (4 calls), for a total of $2,000.

64. Defendant's actions should be considered "knowing" or "willful" for the purposes of 47 U.S.C. § 227 (b)(3), and thus the damages should be trebled by the Court, to $6,000.

## REQUEST FOR RELIEF

65. Plaintiff seeks the trebled statutory damages of $10,500 from Count 1, plus the trebled statutory damages of $6,000 from Count 2, totaling $16,500.

66. Pursuant to 47 U.S.C. § 227 (b)(3), Plaintiff also seeks an injunction prohibiting Defendant or its agents from making any more calls to Plaintiff's cell phone number using an artificial or prerecorded voice.

67. Pursuant to 47 U.S.C. § 227 (c)(5), Plaintiff also seeks an injunction prohibiting Defendant or its agents from initiating any more unsolicited telemarketing to Plaintiff's cell phone in the future.

68. Plaintiff seeks reimbursement by Defendants for any costs incurred in the process of filing and litigating this complaint.

69. Plaintiff seeks any additional remedies the Court deems just and reasonable.

Date: 2/20/26

Alexander von Brandenfels

*[signature]*

415 Oak Grove St, Apt 500, Minneapolis, MN, 55403
Tel.: (612) 405-8389
Email: alex.brandenfels@gmail.com