**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Alexander von Brandenfels,<br><br>Plaintiff,<br><br>v.<br><br>LTL LED, LLC d/b/a Wolf River Electric,<br><br>Defendant. | Court File No.: 0:26-cv-01559-ECT/DTS<br>Case Type: Civil-Other<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LTL LED LLC'S MOTION FOR PROTECTIVE ORDER** |

Defendant LTL LED, LLC d/b/a Wolf River Electric ("Wolf River") submits this Memorandum of Law to support its Motion for Protective Order in this matter.

### INTRODUCTION

From the outset of this matter, Wolf River has informed Plaintiff of the need for a protective order governing discovery and has made repeated efforts to reach an agreement on a stipulated protective order. Wolf River raised the issue during the parties' Rule 26(f) conference, provided Plaintiff with a proposed protective order, and met and conferred with Plaintiff on multiple occasions regarding its entry. Kasprowicz Decl. ¶¶ 10–16. Those efforts have been unsuccessful. Plaintiff has refused to agree to a protective order, leaving Wolf River with no practical alternative but to seek relief from the Court.

Wolf River does not seek to avoid its discovery obligations or withhold relevant, nonprivileged information. To the contrary, Wolf River has agreed to produce responsive information and documents, subject to reasonable protections for confidential and commercially sensitive material. A protective order is necessary because Plaintiff's

1

discovery extends beyond ordinary records concerning the communications alleged in his Complaint and reaches directly into Wolf River's internal business systems, policies, and operational processes.

Plaintiff seeks, among other things, Wolf River's CRM records concerning Plaintiff, written do-not-call policies, and documents sufficient to understand Wolf River's policies and procedures for preventing calls to persons on the National Do Not Call Registry, persons who have not consented to telemarketing, and persons who have requested not to receive communications. Plaintiff also seeks records reflecting Wolf River's relationships with persons or entities authorized to telemarket on its behalf and documents concerning its use of particular telephone numbers.

More significantly, Plaintiff has demanded inspection of all software Wolf River used to make calls from a particular telephone number, including how calls are placed, how call records are generated, stored, and retrieved, and how the software determines which telephone numbers should be called. Plaintiff separately seeks inspection of his records within Wolf River's software, as well as records of calls and text messages associated with Wolf River's telephone systems. His interrogatories likewise seek identification of all systems, software, and vendors Wolf River has used to communicate with customers and prospective customers, including systems used for CRM functions, calling, texting, lead management, and customer management.

These materials concern the internal operation of Wolf River's sales, customer-acquisition, telephony, and compliance systems. See Marchenko Decl. ¶ 2–6. They include confidential commercial information regarding how Wolf River obtains and maintains

2

leads, evaluates consent and contact information, manages customer records, controls outbound communications, works with vendors, implements do-not-call restrictions, and determines which prospective customers may be contacted. *Id.* ¶ 11–13. Wolf River's discovery responses further reflect that its internal processes involve lead-source governance, calling hours and frequency, CRM and dialer controls, recordkeeping, complaint handling, vendor management, training, quality assurance, and software controls designed to suppress numbers that should not be called. Wolf River differentiates itself from competing solar companies, in part, through the methods it uses to develop and maintain customer leads and acquire customers. See Marchenko Decl. ¶ 2–7. Unrestricted disclosure and use of this information would therefore expose commercially sensitive aspects of Wolf River's internal business operations beyond what is necessary to litigate this case.

The protective order proposed by Wolf River (the "Proposed Order") is narrowly tailored to address these confidentiality concerns without impairing Plaintiff's ability to pursue his claims. It does not impose an "Attorneys' Eyes Only" designation and does not prevent Plaintiff from personally reviewing designated information. Instead, the Proposed Order merely limits the use of designated confidential information to this litigation and restricts disclosure to the parties, the Court and its personnel, counsel and necessary litigation personnel, and qualified litigation-support vendors or other retained persons who agree to maintain confidentiality. Proposed Order § 5. Plaintiff remains free to review designated information, use it in discovery and motion practice, consult appropriate litigation assistance, challenge any confidentiality designation, and present the information

3

to the Court.

Federal Rule of Civil Procedure 26(c)(1)(G) expressly authorizes the Court to protect trade secrets and other confidential commercial information by requiring that such information be disclosed only in a specified manner. Wolf River seeks no more than that ordinary protection here. The requested discovery reaches into Wolf River's internal software, CRM systems, vendor relationships, compliance procedures, lead-management practices, and customer-acquisition processes, while the Proposed Order places no meaningful restriction on Plaintiff's ability to use relevant information to litigate this case. Under these circumstances, good cause exists for entry of the Proposed Order. The Court should therefore grant Wolf River's motion and enter the Proposed Order.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff asserts claims under the Telephone Consumer Protection Act ("TCPA") based on telephone calls and text messages he alleges he received. Compl. ¶¶ 57–64. Plaintiff alleges, among other things, that Wolf River used an artificial or prerecorded voice and contacted him despite his telephone number being registered on the National Do Not Call Registry. *Id.* Wolf River denies that it made several of the communications alleged in the Complaint and contends that Plaintiff previously provided his contact information to Wolf River in connection with an inquiry concerning residential solar systems. Answer ¶¶ 15–17. Wolf River also does not use artificial or prerecorded voices to place outbound calls to customers or prospective customers. Marchenko Decl. ¶ 10.

Wolf River further contends that it maintained and implemented policies, procedures, and technological controls intended to comply with the TCPA and applicable

4

do-not-call requirements. Answer ¶ 20. Those practices address, among other things, lead intake and management, customer consent, the National Do Not Call Registry, internal do-not-contact requests, CRM and calling-software controls, recordkeeping, employee training, complaint handling, and compliance review. *Id.*; Marchenko Decl. ¶¶ 3–13.

Plaintiff thereafter served twenty interrogatories and thirteen requests for production. Kasprowicz Decl. ¶ 2. Plaintiff's discovery does not seek only records concerning the particular communications alleged in the Complaint. It also seeks information and documents concerning Wolf River's internal business systems and customer-acquisition processes, including:

1. Internal call records, text records, telephone-number records, training materials, compliance records, complaint-handling materials, quality-assurance materials, and other records concerning Wolf River's customer-contact operations;

2. Wolf River's CRM and customer-contact records, including information showing how customer and prospective-customer records are maintained and whether particular telephone numbers are restricted, suppressed, or designated as do not call;

3. The systems, software, platforms, and vendors Wolf River uses or has used for calling, texting, CRM functions, lead management, customer management, and communications with customers and prospective customers;

4. Direct inspection of Wolf River's calling software, including how calls are initiated, how call records are generated, stored, and retrieved, and how the software determines which telephone numbers should be called;

5. Wolf River's written policies and procedures concerning telemarketing, customer

consent, the National Do Not Call Registry, internal do-not-call requests, opt-outs, and the suppression or restriction of telephone numbers;

6. Wolf River's lead sources and its internal methods for obtaining, evaluating, categorizing, managing, and maintaining prospective-customer information;

7. Wolf River's methods for reviewing and documenting consent and determining whether a prospective customer may be contacted;

8. Wolf River's internal software controls and procedures for implementing do-not-call, opt-out, and telephone-number suppression requirements; and

9. Agreements, directives, and other records concerning vendors, contractors, software providers, telephone-service providers, and other persons or entities involved in calling, texting, telemarketing, lead generation, CRM services, or customer communications on Wolf River's behalf.

Kasprowicz Decl. ¶ 3.

The information sought through these requests implicates business processes that Wolf River has developed and refined over a period of years. Marchenko Decl. ¶¶ 3–7. Wolf River has invested substantial time, money, personnel, experience, and other resources developing its processes for acquiring, managing, developing, routing, assigning, contacting, and dispositioning prospective-customer leads. *Id.* ¶¶ 3–7. Those processes incorporate Wolf River's CRM systems, software, databases, system configurations, integrations, automations, workflows, and other technological tools. *Id.* ¶¶ 5–8. The commercial value of these systems is not limited to the individual software products Wolf River uses, but includes the particular manner in which Wolf River has configured,

6

combined, and implemented its technology, information, procedures, and workflows as an integrated lead-acquisition and sales system. *Id.* ¶¶ 4–8.

Wolf River does not make its internal lead-management systems, procedures, workflows, configurations, or related business information publicly available and restricts access to persons who require the information for legitimate business purposes. *Id.* ¶¶ 11–13. Wolf River considers this information confidential and commercially sensitive because disclosure could allow competitors to learn how Wolf River obtains and evaluates leads, prioritizes prospective customers, manages leads through its systems, determines when and how prospects are contacted, and uses technology to facilitate those processes. *Id.* ¶¶ 14–18. In Mr. Marchenko's business judgment, unrestricted disclosure of this information would create a substantial risk of competitive and commercial harm to Wolf River. *Id.* ¶ 19.

Wolf River has not refused to provide relevant, nonprivileged discovery. Rather, Wolf River has consistently taken the position that responsive confidential, proprietary, commercially sensitive, or trade-secret information should be produced subject to an appropriate protective order. Kasprowicz Decl. ¶¶ 7–13, 17. Wolf River's written discovery responses accordingly advised Plaintiff that responsive confidential or trade-secret materials would be produced after entry of an appropriate protective order. *Id.* ¶¶ 7–9.

Wolf River first raised the need for a protective order during the parties' Rule 26(f) conference on April 6, 2026. Kasprowicz Decl. ¶ 10. The parties thereafter discussed the issue by email on June 15, July 8, and July 20, 2026. *Id.* ¶ 11. During those

communications, Wolf River provided Plaintiff with a proposed protective order and asked Plaintiff to identify any specific provisions or language to which he objected so that the parties could attempt to resolve their differences without Court intervention. *Id.* ¶ 12.

On August 6, 2026, the parties met by video conference and again discussed the need for a protective order. *Id.* ¶ 13. Wolf River reiterated that it was not seeking to avoid discovery, but sought reasonable protections governing the use and disclosure of confidential and commercially sensitive information responsive to Plaintiff's requests. *Id.* ¶¶ 13–17. Despite these efforts, the parties have been unable to reach agreement on a protective order. Wolf River therefore brings this Motion so that discovery may proceed subject to reasonable protections for confidential and commercially sensitive information.

## LAW

Federal Rule of Civil Procedure 26(c)(1) authorizes the Court to issue an order, for good cause, protecting a party from annoyance, embarrassment, oppression, or undue burden or expense. The permitted relief includes an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). As determined by the Supreme Court in *Seattle Times Co. v. Rhinehart*, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." 467 U.S. 20, 36 (1984).

"Confidential business information has long been recognized as property." *Carpenter v. United States,* 484 U.S. 19, 26 (1987). "Where discovery of confidential

8

commercial information is involved, the court must "balance the risk of disclosure to competitors against the risk that a protective order will impair prosecution or defense of the claims"." *Bussing v. COR Clearing, LLC*, No. 8:12CV238, 2015 WL 4077993 (D. Neb. July 6, 2015) (citations omitted).

The Eighth Circuit has specifically recognized the importance of protecting confidential commercial information in discovery:

> "In drafting a protective order for the discovery of trade secrets, the district court may take into account the following considerations. First, use of the discovered information should be limited to the particular lawsuit in which it has been shown to be both relevant and necessary to the prosecution of the case. Second, the protective order should limit the persons who are given access to the trade secrets. Third, the protective order should limit, or prohibit entirely, the reproduction of all confidential documents. Fourth, the protective order may require a bond to protect against the risk of injury from the disclosure of trade secrets. Finally, the protective order may designate an attorney to serve as a custodian for all confidential documents."

*In re Remington Arms Co., Inc.* 952 F.2d 1029 (8th Cir. 1991)(citations omitted). When a party establishes that discovery seeks trade secrets or other confidential research, development, or commercial information and that disclosure would be harmful, the court must account for the producing party's interest in protecting that information. *Id.* at 1032-33.

Where otherwise discoverable confidential information must be produced, the Eighth Circuit has instructed district courts to employ appropriate protections against unnecessary disclosure. *Id.* at 1033. Those protections may include limiting the use of confidential information to the particular litigation and restricting the persons permitted to access it. *Id.* Indeed, *Remington Arms* expressly identifies limitations on the use of

discovered information and restrictions on who may access confidential information as appropriate features of a protective order. *Id.*

Courts evaluating confidential commercial information balance the potential injury from disclosure against the receiving party's need to use the information in litigating its claims or defenses. See *id.* at 1032-33.

A "trade secret" is defined in MUTSA as "information" that "(1) is not generally known or readily ascertainable, (2) has value as a result of its secrecy, and (3) is the subject of reasonable efforts under the circumstances to protect its secrecy." See *Ch Bus Sales, Inc. v. Geiger,* No. 18-CV-2444 (SRN/KMM), 2019 WL 1282110, at *8 (D. Minn. Mar. 20, 2019) (citing Minn. Stat. § 325C.01, subdiv. 5) (other citations omitted). Courts have recognized that a broad range of confidential business information may qualify as a trade secret. In *American Achievement Corp. v. Jostens, Inc.,* the plaintiff "alleged that it has trade secrets constituting "pricing information, account contact lists, customer information, product information, product lists, supplies bulletins, sales, plans, financial information, and commission matrices," sales and marketing techniques and strategies, and compensation and bonus structures." 622 F. Supp. 3d 749, 764 (D. Minn. 2022) (citations omitted). The court stated, "these things can be trade secrets if efforts are made to protect secrecy." *Id*. (citation omitted).

## ARGUMENT

I.  **Good cause exists because Plaintiff's discovery seeks confidential commercial information that would expose Wolf River's internal business systems and customer-acquisition methods to unrestricted disclosure.**

Rule 26(c)(1)(G) expressly authorizes the Court to protect "a trade secret or other

10

confidential research, development, or commercial information" by requiring that the information "not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). Wolf River has established good cause for such protection here. Plaintiff's discovery seeks detailed information concerning Wolf River's internal lead-acquisition methods, customer-management processes, CRM and calling systems, software configurations and workflows, vendor relationships, consent-management procedures, and methods for determining whether and when prospective customers should be contacted. See Kasprowicz Decl. ¶ 3.

Plaintiff's requests are not limited to records concerning the discrete communications alleged in the Complaint. Plaintiff has demanded identification of the systems, software, and vendors Wolf River uses for calling, texting, CRM functions, lead management, customer management, and communications with customers and prospective customers. Plaintiff has also demanded direct inspection of Wolf River's calling software, including how calls are initiated, how call records are generated, stored, and retrieved, and how the software determines which telephone numbers should be called. His discovery further seeks Wolf River's CRM records, internal do-not-call policies, consent procedures, and policies for determining whether prospective customers may be contacted.

The information sought concerns core aspects of Wolf River's business. Wolf River operates in a highly competitive solar industry, where the ability to efficiently acquire, manage, develop, and disposition prospective-customer leads is an important component of its ability to compete. Marchenko Decl. ¶ 2. Over a period of years, Wolf River has invested substantial time, money, personnel, experience, and other resources developing

and refining its processes for acquiring, evaluating, categorizing, prioritizing, routing, assigning, contacting, managing, and dispositioning leads. *Id*. ¶¶ 2–6.

Those processes incorporate Wolf River's CRM systems, software, databases, system configurations, integrations, automations, workflows, and other technological tools. *Id*. ¶¶ 5–6. Their commercial value does not lie merely in the identity of an individual software product. Rather, the value lies in the manner in which Wolf River has developed, configured, combined, and implemented its technology, information, procedures, and workflows into an integrated lead-acquisition and sales system. *Id*. ¶¶ 7–8. Plaintiff's request to inspect Wolf River's software and understand how its systems determine which telephone numbers should be contacted therefore reaches directly into the operation of the business processes Wolf River has spent years developing.

The District of Minnesota's decision in *American Achievement Corp. v. Jostens, Inc.,* 622 F. Supp. 3d 749 (D. Minn. 2022), is instructive. There, the court recognized that customer information, sales and marketing techniques and strategies, and similar commercial information may constitute protectable trade secrets where the business takes reasonable measures to preserve secrecy and the information derives economic value from remaining confidential. *Id*. The court found significant allegations that the plaintiff maintained security over its confidential business information, restricted disclosure to persons with a business need, and derived economic value from the information because it assisted the company in targeting likely customers. *Id*.

Wolf River has made a comparable factual showing here. Wolf River does not make its internal lead-management systems, procedures, workflows, configurations, or related

business information available to the public and restricts access to persons who require the information for legitimate business purposes. Marchenko Decl. ¶¶ 11–13. The information has economic value because it reflects Wolf River's accumulated experience and investment concerning how leads are obtained, evaluated, prioritized, managed, contacted, and ultimately dispositioned. *Id*. ¶¶ 14–15. A competitor given unrestricted access to that information could obtain the benefit of Wolf River's years of experience and investment without incurring the same expense, experimentation, and unsuccessful efforts necessary to independently develop comparable processes. *Id*. ¶¶ 16–18.

The Eighth Circuit's decision in *Conseco Financial Servicing Corp. v. North American Mortgage Co.*, 381 F.3d 811 (8th Cir. 2004), reinforces that conclusion. There, the court held that lead sheets generated through a proprietary computer program and confidential information contained in customer files constituted trade secrets. *Id*. at 819. Of particular significance, the court rejected the argument that the information lacked protection merely because some constituent information could be obtained elsewhere. The proprietary system provided a distinctive compilation of information that was not otherwise available, the customer files contained confidential information, the information provided economic benefit by allowing the company to identify customers likely to need additional services, and the company took reasonable measures to maintain its secrecy. *Id*.

The same reasoning applies here. Even where the identity of an individual software provider or a discrete piece of information might be ascertainable independently, Plaintiff seeks far more than that. He seeks information concerning how Wolf River combines its software, CRM systems, lead information, consent information, workflows, vendors, and

13

internal procedures to acquire and manage leads and determine which prospective customers should be contacted. See Marchenko Decl. ¶¶ 20–22. It is that integrated system, developed through Wolf River's experience and investment and maintained outside public view, that gives the information commercial significance.

Nor must Wolf River establish at this stage that every responsive document independently satisfies every element of a statutory trade secret. Rule 26(c)(1)(G) protects both trade secrets and "other confidential research, development, or commercial information." The Eighth Circuit has recognized that confidential business information is a protectable property interest and that Rule 26(c) exists to safeguard such information during discovery. *In re Remington Arms Co.,* 952 F.2d 1029, 1032-33 (8th Cir. 1991).

The potential harm from unrestricted disclosure is concrete. Disclosure could permit competitors or other third parties to learn how Wolf River obtains leads, which sources and vendors it uses, how it evaluates and prioritizes prospective customers, how customer and consent information moves through its systems, how its customer-contact workflows operate, and how Wolf River has configured technology to implement those processes. Marchenko Decl. ¶¶ 16–19. Competitors could use that information to replicate Wolf River's processes, avoid the time and expense Wolf River incurred developing them, target the same prospective customers, or otherwise compete against Wolf River using Wolf River's own accumulated business knowledge. *Id*. ¶ 23. Once such information is disclosed without restriction, the resulting loss of confidentiality cannot practically be undone. *Id*. ¶ 19.

Plaintiff's discovery also implicates information concerning persons who are not

14

parties to this litigation. For example, Plaintiff seeks records of all calls and texts to or from a Wolf River telephone number during a two-month period, not merely communications involving Plaintiff. Such records may contain information concerning Wolf River customers, prospective customers, employees, vendors, or other third parties who have no involvement in this action. See Kasprowicz Decl. ¶ 5. A protective order provides a reasonable means of permitting discovery of responsive information while limiting unnecessary dissemination of third-party information.

The balance therefore weighs decidedly in favor of reasonable confidentiality protections. Where confidential commercial information is sought, courts balance the risk of competitive disclosure against the possibility that the protective order will impair a party's ability to prosecute or defend the action. *Bussing v. COR Clearing, LLC*, No. 8:12CV238, 2015 WL 4077993, at 2 (D. Neb. July 6, 2015). Here, the risk of commercial harm is substantial, while, as explained below, the Proposed Order does not prevent Plaintiff from seeing or using the information.

The Proposed Order is also consistent with the protections contemplated by the Eighth Circuit. In *Remington Arms*, the court instructed that an appropriate protective order may limit the use of confidential discovery to the particular lawsuit and restrict the persons permitted to access that information. 952 F.2d 1029 at 1033. That is precisely what Wolf River proposes. The Proposed Order limits confidential material to use in this action and identifies the persons to whom such information may be disclosed. Proposed Order §§ 2, 5.

Those restrictions are also consistent with the District of Minnesota's own form

15

protective order. The Court's form permits a producing party to designate materials containing confidential or proprietary information as confidential, limits confidential documents to use in the action, permits disclosure to the parties and persons assisting them with the litigation, and provides procedures for challenging confidentiality designations. Wolf River therefore seeks an ordinary discovery protection of the type expressly contemplated by Rule 26(c), Eighth Circuit precedent, and this District's own protective-order form.

## II.     The Proposed Order is narrowly tailored and does not prejudice Plaintiff or impair his ability to litigate his claims.

The Proposed Order does not prevent Plaintiff from obtaining relevant discovery. It regulates only the use and disclosure of information properly designated as confidential. Proposed Order §§ 2–6. Most importantly, Wolf River does not seek an "Attorneys' Eyes Only" restriction. Plaintiff may personally review information designated confidential and use that information for purposes of this litigation.

Under the Proposed Order, Plaintiff remains able to review confidential discovery, investigate his claims, prepare motions and other filings, conduct discovery, take depositions, consult persons appropriately retained to assist him with the litigation, and present relevant information to the Court. *Id*. The Order therefore preserves Plaintiff's ability to litigate his case while preventing confidential commercial information from being used or disseminated for purposes unrelated to this lawsuit.

The Proposed Order permits confidential information to be disclosed to the parties; counsel and personnel reasonably necessary to assist with the litigation; the Court and its

16

personnel; experts, consultants, professional vendors, and other persons retained to assist with the litigation; and mediators, settlement judges, arbitrators, or other appropriate dispute-resolution neutrals. *Id*. § 5. Persons receiving confidential information, other than those exempted by the Proposed Order, must acknowledge the confidentiality obligations imposed by the Order before receiving the information. *Id*.

These provisions closely track the types of restrictions the Eighth Circuit identified as appropriate in *Remington Arms*. 952 F.2d 1029 at 1033. There, the court specifically recognized limitations on the use of discovered information to the pending lawsuit and limitations on the persons permitted access to confidential information as appropriate means of protecting confidential discovery. The District of Minnesota's form protective order likewise limits confidential documents to use in the action while permitting the parties themselves, the Court, attorneys, and persons retained to assist with the litigation to receive confidential information.

The Proposed Order is also reciprocal. It applies equally to both parties. Proposed Order § 2. Plaintiff may designate his own qualifying confidential material, and Wolf River will be bound by the same restrictions governing its use and disclosure. *Id*. And a confidentiality designation is not conclusive. The Proposed Order establishes a procedure through which either party may challenge a designation and, if necessary, obtain a determination from the Court. *Id*. § 4.

Plaintiff's pro se status does not alter that balance. Wolf River is not asking the Court to prevent Plaintiff from personally accessing confidential discovery, nor is it asking that such information be available only to an attorney. The principal concern that can arise

17

from an Attorneys' Eyes Only provision, namely that a party may be unable to meaningfully participate in the preparation of his own case, is therefore absent. Indeed, *Bussing* illustrates the distinction: there, the dispute concerned whether confidential information should be withheld from the plaintiff herself under an Attorneys' Eyes Only designation, requiring the court to balance competitive harm against the plaintiff's need for personal access. 2015 WL 4077993, at 2–4. Wolf River seeks no such restriction here.

Instead, the Proposed Order facilitates discovery. Protective orders serve an important function in permitting parties to exchange information during discovery without unnecessarily exposing protected information to unrestricted dissemination. See *McElgunn v. CUNA Mut. Ins. Soc'y*, No. CIV. 06-5061-KES, 2010 WL 2720879, at 2 (D.S.D. July 8, 2010). Entry of the Proposed Order will allow Wolf River to produce responsive confidential information while preserving Plaintiff's ability to review and use that information for every legitimate purpose in this litigation.

Wolf River has thus identified specific categories of confidential commercial information sought by Plaintiff, established the measures it takes to maintain the confidentiality of that information, and explained the competitive harm that could result from unrestricted disclosure. At the same time, the Proposed Order preserves Plaintiff's personal access to the discovery and imposes only ordinary limitations on its use outside this action. Good cause therefore exists under Rule 26(c)(1)(G), and the Court should enter the Proposed Order.

## CONCLUSION

For the foregoing reasons, Wolf River respectfully requests that the Court grant its

Motion for Protective Order and enter the Proposed Order. Plaintiff's discovery seeks confidential and commercially sensitive information concerning Wolf River's internal business systems, lead-management processes, software, CRM systems, vendor relationships, customer-contact procedures, and related operational information. Wolf River has demonstrated good cause for reasonable protections governing the use and disclosure of that information.

The Proposed Order does not prevent Plaintiff from obtaining, reviewing, or using relevant discovery in this action. It merely limits the use of properly designated confidential information to this litigation and restricts its disclosure to appropriate persons. Because those protections are narrowly tailored, reciprocal, and consistent with Rule 26(c)(1)(G), the Court should enter the Proposed Order.

Dated: August 12, 2026

Nicholas J. Kasprowicz #403808
General Counsel
Wolf River Electric
100 Isanti Parkway NE
Isanti, MN  55040
Office: (612) 305-8410
Nick@wolfriverelectric.com
**Attorney for LTL LED LLC**

19