**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Alexander von Brandenfels,<br><br>Plaintiff,<br><br>v.<br><br>LTL LED, LLC d/b/a Wolf River Electric,<br><br>Defendant. | Court File No.: 0:26-cv-01559-ECT/DTS<br>Case Type: Civil-Other<br><br>**DECLARATION OF VLADIMIR MARCHENKO IN SUPPORT OF DEFENDANT LTL LED LLC'S MOTION FOR PROTECTIVE ORDER** |

I, Vladimir Marchenko, state as follows:

1. My name is Vladimir Marchenko. I am the Chief Executive Officer of LTL LED, LLC d/b/a Wolf River Electric ("Wolf River"). I have personal knowledge of Wolf River's business operations, including its lead-generation, customer-acquisition, sales, customer relationship management ("CRM"), calling, and customer-contact processes and technology.

2. Wolf River operates in the highly competitive solar industry. Identifying prospective customers, acquiring leads, efficiently managing and developing those leads, and converting interested prospects into customers are important aspects of Wolf River's ability to compete successfully.

3. Over a period of years, Wolf River has invested substantial time, money, personnel, experience, and other resources developing and refining its processes for acquiring, evaluating, categorizing, prioritizing, routing, assigning, contacting, managing, and determining the disposition of prospective-customer leads.

4. Wolf River's lead-management and customer-acquisition processes reflect the company's accumulated experience concerning how prospective-customer information should be obtained, evaluated, organized, maintained, assigned, contacted, and managed through the sales

process.

5. Those processes include Wolf River's methods for obtaining and managing lead-source information; collecting and maintaining prospective-customer information; evaluating consent and contact information; determining whether and when prospective customers may be contacted; maintaining do-not-contact and suppression information; and managing communications with prospective customers.

6. Wolf River's processes also incorporate its use of technology, including CRM systems, calling systems, software, databases, system configurations, integrations, automations, workflows, and other technological tools used to acquire, manage, contact, and maintain information concerning prospective customers.

7. The commercial value of these systems is not limited to the identity of the individual software products Wolf River uses. Rather, significant value lies in the particular manner in which Wolf River has developed, configured, combined, and implemented its technology, information, procedures, and workflows as part of an integrated lead-acquisition, customer-management, and sales system.

8. For example, the manner in which Wolf River's systems are configured and used reflects how prospective customers move through Wolf River's business processes, how information concerning a prospective customer is maintained and evaluated, how leads are categorized and prioritized, how leads are assigned and managed, and how Wolf River determines whether and when a prospective customer should be contacted.

9. Wolf River also maintains internal policies and procedures concerning customer communications, including customer consent, do-not-contact requests, the National Do Not Call Registry, calling practices, CRM and software controls, recordkeeping, employee training,

complaint handling, quality assurance, and compliance review.

10. Wolf River does not use artificial or prerecorded voices to place outbound calls to customers or prospective customers. When Wolf River's sales representatives place solicitation calls, the representative initiates the call when the representative is ready to place it.

11. Wolf River does not make its internal lead-management processes, customer-acquisition methods, workflows, CRM configurations, software configurations, integrations, automations, or related internal business information available to the public or to its competitors.

12. Wolf River limits access to its CRM systems, lead information, customer information, software, internal workflows, and other confidential business information to employees, representatives, vendors, and other personnel who require access to that information for legitimate business purposes. Persons without a legitimate business need are not provided access to this information.

13. Wolf River requires all employees and contractors to execute nondisclosure agreements requiring them to maintain the confidentiality of Wolf River's confidential business information, including its internal lead-management systems, customer-acquisition methods, CRM and software configurations, workflows, lead-source information, and related business processes.

14. Wolf River considers its internal lead-management, customer-acquisition, CRM, software, workflow, vendor, and related operational information confidential and commercially sensitive. The information reflects Wolf River's accumulated experience and investment in developing methods for acquiring and managing prospective customers.

15. Wolf River derives economic and competitive value from maintaining the confidentiality of these processes because they affect Wolf River's ability to identify, evaluate,

prioritize, and efficiently pursue prospective customers and to compete with other solar companies for those customers.

16. A competitor obtaining unrestricted access to this information could learn how Wolf River obtains leads, which sources and vendors it uses, how it evaluates and prioritizes prospective customers, how it uses lead-source and consent information, how customer information moves through its systems, how leads are assigned and managed, how and when prospective customers are contacted, and how Wolf River uses technology and internal workflows to carry out those processes.

17. A competitor could use that information to replicate or modify its own lead-generation, customer-acquisition, and sales systems based on Wolf River's experience without incurring the same time, expense, experimentation, and unsuccessful efforts Wolf River incurred in developing and refining its systems independently.

18. Unrestricted disclosure could also reveal information concerning Wolf River's lead sources, vendors, customer-acquisition processes, and other business relationships that Wolf River does not make generally available to competitors or the public. Disclosure of such information could permit competitors to identify and pursue the same lead sources, vendors, prospective customers, or business opportunities used by Wolf River.

19. In my business judgment, unrestricted disclosure of Wolf River's internal systems, processes, configurations, workflows, lead-source information, vendor information, and related commercial information would create a substantial risk of competitive and commercial harm to Wolf River. Once confidential information of this nature is publicly disseminated or made available to competitors, the resulting loss of confidentiality cannot practically be undone.

20. Some of the discovery requested in this action concerns records maintained within

Wolf River's CRM, calling, and customer-management systems. Those systems and records may contain names, telephone numbers, contact information, communications, and other information concerning Wolf River's customers, prospective customers, employees, vendors, contractors, and other persons who are not parties to this litigation.

21. I understand that Plaintiff has requested, among other things, information identifying the systems, software, platforms, and vendors Wolf River uses for customer and prospective-customer communications and has requested inspection of Wolf River's calling software, including how calls are initiated, how call records are generated, stored, and retrieved, and how the software determines which telephone numbers may be called.

22. I further understand that Plaintiff has requested Wolf River's internal policies and procedures concerning do-not-call requirements, customer consent, customer-contact practices, and related compliance procedures, as well as records maintained within Wolf River's CRM and other business systems.

23. Providing unrestricted access to information concerning the operation, configuration, and use of Wolf River's internal software, systems, policies, and workflows could disclose the confidential business processes described above, including how Wolf River acquires and manages leads, evaluates prospective customers, manages customer information, implements customer-contact procedures, and uses technology as part of its sales and customer-acquisition processes.

24. Wolf River is not seeking to prevent Plaintiff from obtaining relevant, nonprivileged information necessary to litigate this action. Wolf River seeks reasonable protections so that confidential and commercially sensitive information produced during discovery is used for purposes of this litigation and is not publicly disseminated or made available to

competitors or others for purposes unrelated to this case.

25. In my business judgment, limiting the use and disclosure of properly designated confidential information to this litigation would protect Wolf River's legitimate commercial interests while permitting relevant discovery to proceed.

26. I therefore respectfully request that the Court enter an appropriate protective order governing confidential and commercially sensitive information produced by Wolf River during discovery in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 12, 2026

Vladimir Marchenko

Vladimir Marchenko

# Vlad Declaration

Final Audit Report 2026-08-12

| | |
|---|---|
| Created: | 2026-08-12 |
| By: | Nick Kasprowicz (nick@wolfriverelectric.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAtj14jZRFmPuNxrSBYqzuNmVqSXYH8r44 |

## "Vlad Declaration" History

Document created by Nick Kasprowicz (nick@wolfriverelectric.com)
2026-08-12 - 10:48:43 PM GMT

Document emailed to Vladimir Marchenko (vmarchenko@wolfriverelectric.com) for signature
2026-08-12 - 10:49:17 PM GMT

Email viewed by Vladimir Marchenko (vmarchenko@wolfriverelectric.com)
2026-08-12 - 10:49:59 PM GMT

Document e-signed by Vladimir Marchenko (vmarchenko@wolfriverelectric.com)
Signature Date: 2026-08-12 - 10:50:12 PM GMT - Time Source: server - Signature Appearance Selected: IMAGE

Agreement completed.
2026-08-12 - 10:50:12 PM GMT