**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Alexander von Brandenfels,<br>Plaintiff,<br><br>v.<br><br>LTL LED, LLC,<br>d/b/a WOLF RIVER ELECTRIC<br>Defendant. | Case No.: 0:26-cv-01559-ECT/DTS |

# PLAINTIFF VON BRANDENFELS' MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCLOSURE AND DISCOVERY RESPONSES

Plaintiff hereby submits his memorandum in support of his Motion To Compel Disclosure and Discovery Responses.

## INTRODUCTION

For months now, Defendant Wolf River Electric has been obstructing discovery and openly violating the Federal Rules of Civil Procedure. Plaintiff has in good faith continually attempted to resolve these issues without involving the Court, including by meeting and conferring with the Defendant's counsel, but these efforts have not been fruitful, and the

parties have not reached agreement as to any of the issues raised in this motion (which Defendant largely has refused to discuss).

Faced with a party that refuses to comply with its obligations under the rules, Plaintiff has no recourse except to seek the aid of the Court in enforcing these obligations and deterring future violations.

## BACKGROUND

In this action, Plaintiff brings claims that Defendant texted and called him in violation of the Telephone Consumer Protection Act.

Plaintiff has served two sets of requests for production (Exhibits 1 and 3), totalling 13 requests, and has served one set of 20 interrogatories (Exhibit 2). Defendant has served responses to all three sets, but has not yet begun production.

Plaintiff has served no other discovery requests at this time.

## PRELIMINARY MATTER: RELEVANCE OF DISCOVERY REQUESTS

Plaintiff's discovery requests at issue in this motion are relevant to his claims and to Defendant's defenses as follows (this list is not exhaustive, and is simply to make a preliminary showing of relevance):

- RFPs 1 and 2, and interrogatories 5, 7, and 10 facially seek to obtain evidence that Defendant may use to support its defenses, or otherwise facially seek relevant information;
- RFP 3 and interrogatories 2 and 8 seek Defendant's records in relation to Plaintiff as a prospective customer (relevant to e.g. Defendant's established business relationship defense) and/or as a litigant against Defendant (facially relevant to this case);
- RFPs 4, 5, 7, 11, and 12, and interrogatories 1, 6, 18, and 20 seek information relating to Defendant's policies and procedures defense;
- RFP 6 and interrogatory 15 seek information relating to Defendant's third-party defense;
- RFP 8 seeks information relating to Plaintiff's claim that Defendant telemarketed to him from this number, and also may reveal evidence relating to Plaintiff's claims that Defendant called him from other phone numbers.
- RFPs 9 and 10 also seek information to help Plaintiff prove that Defendant telemarketed to him from this number. (However, Plaintiff suspects that responses to these requests will not be necessary. When these requests were made, Defendant maintained that it had

no record of calling Plaintiff, but admitted that it owned this phone number. In the parties' meet-and-confer call regarding this motion, Defendant conceded that it did have a record of calling Plaintiff from this number, on the date that Plaintiff alleges in his complaint. Assuming Defendant produces this record to Plaintiff, Plaintiff will not demand that Defendant respond to these RFPs 9 and 10).

- RFP 13 and interrogatories 4, 9, 11, 12, 16, and 17 seek information to prove Plaintiff's claim that Defendant called him from multiple numbers;
- Interrogatories 3 and 19 pertain to Defendant's consent defense;
- Interrogatories 13 and 14 pertain to Plaintiff's artificial/prerecorded voice claims.

**ISSUE 1 - INITIAL DISCLOSURES: FACTS**

- Defendant provided its Initial Disclosures (Exhibit 7) to Plaintiff on April 28, 2026, signed by its counsel Nick Kasprowicz.
- Defendant's Initial Disclosures indicate that it is providing "The name and, if known, the address and telephone number of each individual likely to have discoverable information – along with he [sic] subjects

of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment".

- The Initial Disclosures identify 5 of Defendant's employees as individuals likely having such information (Justin Nielsen, Drake Dammann, Dimitri Orlov, Devon McCaffrey, and Josh Latimer).
- For each of these 5 individuals, regarding the subjects of the information they possess, the Initial Disclosures merely state the person's job title, and that the person "may have information regarding Plaintiff's claims and Defendant's defenses."
- For each of these 5 individuals, the Initial Disclosures don't provide the address or telephone number of the person, and instead state that the person "is represented by counsel and may be contacted by and through the undersigned".
- Defendant has repeatedly refused to supplement its disclosures to provide either the subjects of the information possessed by these individuals that Defendant may use for its defenses, or their addresses and telephone numbers (Plaintiff's Declaration ¶¶ 3-5; Exhibit 8).

- Plaintiff has offered that, instead of providing the addresses and phone numbers of these individuals, Defendant may provide each individual's written consent to allow Defendant to accept service of subpoenas on their behalf. Defendant has declined. (Plaintiff's Declaration ¶¶ 3, 5; Exhibit 8.)

- Defendant has not denied knowing the addresses and telephone numbers of its employees (Plaintiff's Declaration ¶ 10).

## ISSUE 1 - INITIAL DISCLOSURES: RULE AND PURPOSE

Fed. R. Civ. P. 26(a)(1)(A)(i) states that a party must disclose: "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment".

One of the main purposes of this requirement is to facilitate depositions. See *Notes of Advisory Committee on Rules—1993 Amendment* (emphasis added):

> [C]ounsel are expected to disclose the identity of those persons who may be used by them as witnesses or who, if their potential testimony were known, might reasonably be expected to be deposed or called

as a witness by any of the other parties. Indicating briefly the general topics on which such persons have information should not be burdensome, *and will assist other parties in deciding which depositions will actually be needed*.

## ISSUE 1 - INITIAL DISCLOSURES: ARGUMENT

**Defendant has not met its obligation to disclose the "subjects of" the individuals' information:**

Under Fed. R. Civ. P. 26(a)(1)(A)(i), Defendant is required to disclose not just the identity of each individual that likely possesses "discoverable information … that [Defendant] may use to support its … defenses", but also to disclose the "subjects of" that information (so long as the information will not solely be used for impeachment).

By writing in its Initial Disclosures that each individual "may have information regarding Plaintiff's claims and Defendant's defenses", Defendant has merely restated *the criterion that required identifying these individuals in its disclosures in the first place*. This does not fulfill the obligation to provide the "subjects of" that information, because it provides no new information: The fact that the individuals likely have information

regarding Defendant's defenses may already be inferred from the individuals' presence in the disclosures.

The only real information Defendant has provided regarding the information possessed by these individuals is their job titles, which is not sufficient to know the "subjects of" the information they possess relating to this lawsuit.

Defendant's refusal to disclose the "subjects of" the individuals' information is prejudicial, and contrary to the purpose of Rule 26(a)(1)(A)(i), because it impedes Plaintiff's ability to strategize about which individuals, if any, he should depose.

**Defendant has not met its obligation to provide the addresses and telephone number of the individuals:**

Fed. R. Civ. P. 26(a)(1)(A)(i) straightforwardly mandates that "if known", a party must provide the "the address and telephone number" of each individual whose disclosure is required under this rule.

Defendant almost certainly possesses the addresses and telephone numbers of the 5 employees in its disclosures. Nevertheless, it has refused to provide this information.

Stating that an individual "is represented by counsel and may be contacted by and through the undersigned" does not fulfill the obligation to provide that individual's address and phone number; and it does not fulfill the *purpose* of that obligation, which is largely to facilitate the taking of depositions.

Fed. R. Civ. P. Rule 30 governs depositions. Rule 30(a)(1) provides the only way to compel a deponent's attendance without a court order, which is to serve them with a "subpoena under Rule 45". And Rule 45 does not authorize serving a subpoena on a person's attorney. Rather, under Rule 45(b)(1), a subpoena may only be served by delivering it "to the named person".

Defendant's refusal to provide the individuals' contact information in its disclosures prejudices Plaintiff, because it impairs his ability to serve subpoenas on those individuals under Rule 45.

**Defendant is intentionally violating Rule 26 to obstruct discovery:**

There is no dispute between the parties as to what Rule 26(a)(1)(A)(i) requires (Defendant has not even attempted to justify to Plaintiff how its disclosures might be compliant). Defendant simply refuses to comply with the plainly stated requirements of the rule.

Rule 26(a)(1)(A)(i) is unambiguous in its requirement to disclose the "subjects of" individuals' information, and is *especially* unambiguous in its requirement to disclose the address and telephone number of individuals. And Plaintiff has repeatedly explained to Defendant's counsel how Defendant's noncompliance with the rule is impairing his ability to plan and take depositions.

Mr. Kasprowicz understands the rule, and understands the problems that this noncompliance causes for Plaintiff, but nevertheless refuses to provide the required information.

If a party understands its obligations under the rules, and understands how failing to fulfill those obligations prejudices another party, and still refuses to fulfill those obligations, then what conclusion can be drawn other than that the party is intentionally violating the rules to gain an advantage?

**The Court should order Defendant to produce compliant disclosures:**

The default remedy in Rule 37 for failure to identify a witness is that "the party is not allowed to use that … witness to supply evidence on a motion, at a hearing, or at a trial".

However, while Plaintiff would welcome this *in addition to* another remedy, Plaintiff contends that this alone not a particularly useful remedy in the

present case, because Plaintiff believes that Defendant's defenses are factually extremely weak, and unlikely to succeed regardless of what evidence Defendant is allowed to use at trial. Plaintiff's primary concern at this point is making sure he's able to prove his own claims, and for this, Plaintiff believes that deposing some of these individuals may be useful.

Fortunately, this default remedy is far from the only option. The Court has broad authority to correct Defendant's violations: "When a party fails to provide information or identify a witness in compliance with Rule 26(a) or (e), the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008).

In the present case, Plaintiff asserts that the most useful remedy would be to order the Defendant to produce compliant disclosures. This will help Plaintiff decide which depositions must be taken, and facilitate the service of any such depositions, thereby fulfilling the main purpose of Rule 26(a)(1)(A)(i).

## ISSUE 2 - WITHHOLDING OF DISCOVERY IN ABSENCE OF PROTECTIVE ORDER: FACTS

- Plaintiff served his First Set of Requests for Production on Defendant via first class mail on April 9, 2026 (Exhibit 4).
- On May 5, 2026, Defendant claimed not to have received Defendant's First Set of Requests for Production in the mail. Since no delivery tracking is available for first class mail, Plaintiff agreed to treat these April 9 Requests for Production as though they were served by email on May 6, 2026. (Plaintiff's Declaration ¶ 7.)
- On May 7, 2026, Plaintiff served his First Interrogatories on Defendant via certified mail. (Exhibit 5.)
- On June 5, 2026, Defendant provided its responses to Plaintiff's First Set of Requests for Production and First Interrogatories (Exhibits 9, 10). However, it did not produce any documents. (Plaintiff's Declaration ¶ 8.)
- Defendant's June 5 responses to Plaintiff's Requests for Production stated that it would produce documents, and didn't specify a time by which production would be completed.

- Defendant's June 5 responses to Plaintiff's Requests for Production each stated "Defendant is withholding confidential or trade-secret materials, pending entry of an appropriate protective order."
- Defendant's responses to Plaintiff's Interrogatories 6 and 12 also stated that responsive information is being withheld pending "entry of an appropriate protective order".
- On June 7, 2026, Plaintiff emailed Defendant to ask: "When can I expect production of the documents?" (Exhibit 11.)
- On June 10, 2026, Plaintiff served his Second Set of Requests for Production on Defendant via certified mail.
- On July 8, 2026, Counsel for the Defendant, Mr. Kasprowicz, replied to Plaintiff's June 7 "When can I expect production of the documents?" email, stating: "[Defendant] will produce documents once the parties have agreed on a protective order." (Exhibit 11.)
- On July 13, 2026, Defendant responded to Plaintiff's Second Set of Requests for Production (Exhibit 12), but did not produce any documents (Plaintiff's Declaration ¶ 7).

- Defendant's July 13 responses to Plaintiff's Requests for Production stated that it would produce documents, but didn't specify a time by which production would be completed.

- In Defendant's July 13 responses to Plaintiff's Requests for Production, it indicated that some documents responsive to Requests 8 through 12 would be withheld until "entry of an appropriate protective order".

- Both of Plaintiff's Sets of Requests for Production specify that production must be completed "within 30 days from the date of service hereof".

- As of the date of filing this motion, Defendant has produced no documents to Plaintiff (neither in response to Plaintiff's requests, nor as part of its disclosures) (Plaintiff's Declaration ¶ 7).

- Defendant only very recently moved for a protective order, on August 12 (after it already became clear to Defendant that the present motion was imminent).

- Plaintiff has never stated or implied to Defendant that he wanted to stipulate to a protective order (Plaintiff's Declaration ¶ 9).

- Plaintiff has not impeded or prevented Defendant from moving for a protective order, nor has he refused to discuss the matter of a protective order with Defendant (Plaintiff's Declaration ¶ 10).

- In fact, over the past several months, Plaintiff has repeatedly reminded Defendant to take the initiative to seek a protective order if it wants one.

- Prior to Defendant's deadline to respond to Plaintiff's First Requests for Production, Plaintiff requested at least four times that Defendant provide a proposed protective order to Plaintiff, to facilitate discussion of the issue. (Plaintiff's Declaration ¶¶ 12-14; Exhibit 12: "Can you send a copy of your proposed protective order?"; Exhibit 13: "You still haven't provided me with a copy of a proposed protective order").

- On June 7, after Defendant submitted its responses to Plaintiff's First Requests for Production, Plaintiff again emailed Defendant requesting that Defendant send a proposed protective order (Exhibit 15).

- On June 10, Plaintiff emailed Defendant, asserting that Defendant had no right to withhold discovery pending a protective order, when Defendant hadn't taken any steps towards obtaining a protective

order (Exhibit 16: “You can't withhold discovery on the basis of a protective order that doesn't exist (and that you haven't even sought!)”).

- Defendant didn’t provide any proposed protective order to Plaintiff until June 19 (Plaintiff’s Declaration ¶ 15), roughly two weeks after its first discovery responses were due.
- Defendant possesses a link to Plaintiff’s calendar, which allows it to unilaterally schedule meetings with Plaintiff at any time where Plaintiff’s calendar is free. Plaintiff’s calendar tends not to be very full, and Defendant could have scheduled a protective order meet-and-confer with Plaintiff on almost any day between the parties’ Rule 26(f) conference, and the day its first discovery responses were due. It did not do so. (Plaintiff’s Declaration ¶ 16.)

## ISSUE 2 - WITHHOLDING OF DISCOVERY IN ABSENCE OF PROTECTIVE ORDER: RULES

The deadline for production is dictated by Fed. R. Civ. P. Rule 34(b)(2)(B), which specifies in relevant part that “production must … be completed no later than the time for inspection specified in the request or another reasonable time specified in the response”.

Rule 33(b)(2) sets the deadline to respond to interrogatories as 30 days after service.

Neither Rule 33 nor 34 grant a party the right to withhold production or responses merely on the basis of the *absence* of a desired protective order.

Fed. R. Civ. P. Rule 26(c) governs protective orders. This rule places the responsibility for obtaining a protective order on the party from whom discovery is sought, reading in relevant part: “A party … from whom discovery is sought may move for a protective order in the court where the action is pending…. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense”.

Plaintiff is not aware of any rule or case law that obligates him to stipulate to a protective order that’s been requested by another party.

## ISSUE 2 - WITHHOLDING OF DISCOVERY IN ABSENCE OF PROTECTIVE ORDER: ARGUMENT

**Defendant’s motion for a protective order is untimely:**

Per Fed. R. Civ. P. Rule 34(b)(2)(B), “production must … be completed no later than the time[s] for inspection specified in [Plaintiff’s] request[s]” (since

Defendant's responses didn't state another time by which production should be completed). Both of Plaintiff's sets of requests specify that production must be completed "within 30 days from the date of service [t]hereof"[1].

At the time of writing this memorandum, it has respectively been 97 and 62 days since Plaintiff's First and Second Sets of Requests for Production were served. So production is overdue for both sets.

And similarly, it has been 96 days since Plaintiff served his First Interrogatories on Defendant. The deadline to respond to those interrogatories has also passed.

At this point, Defendant's motion for a protective order is untimely, at least with respect to those discovery requests whose responses have already become due. A motion for a protective order should be made before discovery is due. See:

- *Rotoworks Int'l Ltd. v. Grassworks USA, Inc.*, No. CIV. 07-05009, 2007 WL 1364911, at *1 (W.D. Ark. May 8, 2007), denying defendants' motion for a protective order because "defendants failed to seek a protective order for the documents outlined in their current

[1] Though 3 days must be added for the Second Set of Requests for Production under Fed. R. Civ. P. Rule 6(d), since it was served by mail.

motion within thirty (30) days of plaintiff's service of its requests for production”;

- “Motions [for protective orders] under Rule 26(c) must be served before the date set for production.” *United States v. Int'l Bus. Machines Corp.*, 70 F.R.D. 700, 701 (S.D.N.Y. 1976)

This is doubly true for any claims of confidentiality with respect to Defendant’s responses to and production for Plaintiff’s first RFPs and interrogatories. Not only did Defendant not *move* for a protective order before such responses and production were due; it failed to even *propose a specific protective order to Plaintiff* until *after* they were due.

**Defendant is at fault for failing to timely seek a protective order:**

Despite Plaintiff’s repeated reminders, Defendant didn’t present a proposed protective order to Plaintiff until roughly two weeks *after* its first discovery responses were due.

Furthermore, Defendant never at any point requested to schedule a meeting with Plaintiff to confer about a protective order. (Although the parties did briefly discuss the protective order issue during their recent meeting on August 6, this was a meeting that Plaintiff requested for the purpose of discussing his present motion.)

Nothing stood in the way of Defendant timely moving for a protective order, other than its own inaction.

**Defendant's actions violate the rules:**

By withholding documents ostensibly in anticipation of a protective order, Defendant has failed to produce responsive documents, even though production is already due under Rule 34(b)(2)(B).

And Defendant's responses to Plaintiff's interrogatories 6 and 12 are incomplete, since these responses indicate that information will be withheld in the absence of a protective order. This violates Fed. R. Civ. P. 33(b)(3), which requires that each interrogatory be answered "fully".

**Defendant's actions were coercive and in bad faith:**

Plaintiff wants, and is entitled to, Defendant's production in response to his lawful discovery requests. Defendant wants, but is not entitled to, Plaintiff's consent to a protective order.

By refusing to produce *any* documents unless "the parties have agreed on a protective order" (see Defendant's July 8, 2026 email), Defendant denied Plaintiff something he was entitled to, unless Plaintiff gave Defendant something it was not entitled to. This was coercive, and done in bad faith.

(Plaintiff concedes that while meeting and conferring regarding the present motion, Defendant did agree to produce documents it considers non-confidential, without a protective order in place. However, this doesn't retroactively mean that Defendant's prior actions were not coercive. Plaintiff also notes that Defendant still has not produced any documents, confidential or otherwise.)

**The Court should order Defendant to produce documents without regard to any prospective protective order:**

Defendant is withholding discovery, in violation of the rules. This prejudices Plaintiff by preventing him from accessing necessary evidence to prove his case.

To prevent further prejudice to Plaintiff, the Court should use its authority under Fed. R. Civ. P. 37(a)(3)(B) to compel discovery responses; by ordering Defendant to produce documents responsive to Plaintiff's First and Second Sets of Production, and to respond to interrogatories 6 and 12, without regard to any prospective protective order.

## ISSUE 3 - OVERDUE PRODUCTION

As already established above, Defendant's production in response to Plaintiff's First and Second Sets of Production is overdue.

Although Defendant has recently agreed not to withhold non-confidential documents in connection with the protective order issue, it has not yet produced any documents. This lack of production prejudices Plaintiff for the same reasons as does the withholding of ostensibly confidential documents, as argued above.

To correct this prejudice, the Court should use its authority under Fed. R. Civ. P. 37(a)(3)(B) to order Defendant to produce the non-confidential documents responsive to Plaintiff's First and Second Sets of Requests for Production.

**ISSUE 4 - BOILERPLATE OBJECTIONS: FACTS**

- For a timeline of service and responses to Plaintiff's First and Second Sets of Production and First Interrogatories, see "ISSUE 2 - WITHHOLDING OF DISCOVERY IN ABSENCE OF PROTECTIVE ORDER: FACTS" above.
- On June 7, 2026, Plaintiff sent Defendant's counsel an email asking: "Could you clarify what responsive information, if any, has been withheld on the basis of each objection in your response to my requests for production?" (Exhibit 17.)

- Defendant never responded to the above query from Plaintiff's June 7 email (Exhibit 17).

- On June 9, 2026, Plaintiff sent Defendant's counsel an email with the subject "[Time-sensitive] You're waiving your discovery objections", which asserted (with citations to rules and case law) that Defendant's objections to Plaintiff's First Set of Requests for Production and First Interrogatories were invalid and subject to waiver. (Exhibit 18.)

- In Plaintiff's June 9 "You're waiving your discovery objections" email, he also offered to allow Defendant to revise its objections to avoid waiver.

- Defendant never revised its objections (Plaintiff's Declaration ¶ 17).

- Defendant has consistently evaded any discussion of whether Defendant's objections to Plaintiff's discovery requests are sufficiently specific under the rules, or are boilerplate. (Exhibits 17, 18; Plaintiff's Declaration ¶ 18.)

- Most egregiously, when the parties met and conferred on August 6 about the issues in the present motion, Defendant's counsel outright refused to discuss the issue of boilerplate objections (Plaintiff's Declaration ¶ 18).

## ISSUE 4 - BOILERPLATE OBJECTIONS: RULES AND CASE LAW

**Rules, interrogatory objections:**

Regarding objections to interrogatories, Fed. R. Civ. P. 33(b)(4) provides: "The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."

**Rules, production/inspection objections:**

Fed. R. Civ. P. 34(b)(2) controls how objections may be made to requests for production or inspection. It requires, in relevant part, that:

- A responding party must "state with specificity the grounds for objecting to the request, including the reasons", and
- "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."

The *Committee Notes on Rules—2015 Amendment* elaborate on these requirements of Rule 34(b)(2) and their purpose, stating:

- "An objection may state that a request is overbroad, but if the objection recognizes that some part of the request is appropriate the objection should state the scope that is not overbroad."
- The requirement that "an objection to a Rule 34 request must state whether anything is being withheld on the basis of the objection" is intended to "end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections."

Note also, the Court's Rule 16 Order (Doc. 7) required the parties to certify in their Rule 26(f) report that "Counsel have reviewed the amendments to the Federal Rules of Civil Procedure effective December 1, 2015 and are familiar with the amendments." (The 2015 amendments added the above-quoted specificity requirements to Rule 34.)

**Case law, boilerplate interrogatory objections:**

It is extremely well established in the case law that the "mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an

interrogatory." This exact quote has been cited favorably in dozens of Federal judicial opinions, including in this district. See e.g. *Saroya v. CAIR Found., Inc.*, 348 F.R.D. 632, 642 (D. Minn. 2024).

When objecting to an interrogatory, "the party resisting discovery must specify how each request is deficient and articulate the particular harm that would accrue if they were required to respond to the discovery request." *Id.* (internal quotations omitted).

A party that states an objection, but fails to do so properly, waives its objections. See *Hobley v. Chicago Police Commander Burge*, No. 03 C 3678, 2003 WL 22682362, at *4 (N.D. Ill. Nov. 12, 2003): "Objections must not only be timely, they must be proper, or the result is waiver."

**Case law, boilerplate objections to production/inspection:**

While Rule 34 doesn't explicitly contain the same waiver language as Rule 33, "It is well settled that the failure to make a timely objection in response to a Rule 34 request results in waiver" *Phillips v. Dallas Carriers Corp.*, 133 F.R.D. 475, 477 (M.D.N.C. 1990).

To avoid such waiver, an objection must not merely be timely, but must also be stated with particularity:

- "Objections must be stated with specificity, and any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown." *Cat v. Polaris Indus. Inc.*, No. 13-CV-3579 (JRT/FLN), 2015 WL 12830409, at *2 (D. Minn. June 2, 2015).
- "By failing to present valid objections to these discovery requests, [respondents] waived any legitimate objection [they] may have had." *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 247 (M.D.N.C. 2010). (Internal quotations omitted)

## ISSUE 4 - BOILERPLATE OBJECTIONS: ARGUMENT

**Preface:**

Plaintiff finds it impossible to argue individually against each of Defendant's voluminous boilerplate objections. To do so here would certainly exceed the word count limit of Local Rule 7.1(f). It would also not be in the interests of justice, nor a good use of the Court's time, to require Plaintiff to exhaustively argue against the validity of each of Defendant's objections, when Defendant clearly spent very little of its own time copying and pasting its boilerplate.

In this Motion, Plaintiff does not ask the Court to rule on the merits of any objections that the Court finds to be stated with sufficient specificity to comply with the rules. Rather, Plaintiff's request in this motion is to eliminate *boilerplate* objections, and thereby narrow and clarify which discovery issues actually exist that the parties must confer about and resolve between themselves.

Accordingly, Plaintiff makes only general arguments against Defendant's boilerplate objections here.

**Defendant's objections to Plaintiff's discovery requests are impermissible boilerplate:**

1. Almost all of Defendant's objections to Plaintiff's production/inspection requests violate the Rule 34(b)(2)(C) requirement to "state whether any responsive materials are being withheld on the basis of that objection". The only exceptions are:

- Several of Defendant's responses state that confidential information is being withheld pending a protective order; and
- The response to Request for Production No. 7 states that "Defendant is withholding email correspondence on the basis of attorney-client privilege". (However, even this fails to comply with the Rule 26(b)(5)

requirement that a respondent claiming privilege must "describe the nature of the documents [claimed as privileged]" "in a manner that … will enable other parties to assess the claim".)

Aside from these exceptions, Defendant merely states: "Subject to and without waiving these objections, Defendant will produce responsive documents." This leaves Plaintiff guessing as to whether any particular objection actually resulted in any documents being withheld (which is precisely the situation that the 2015 amendments to Rule 34 were designed to avoid, per the *Committee Notes on Rules—2015 Amendment* cited above). In failing to comply with Rule 34 in this manner, all such objections are waived.

2. Almost all of Defendant's objections are conclusory assertions that a request is objectionable in some way (e.g. "overbroad", "vague", "ambiguous", "disproportionate to the needs of the case"), without any explanation as to why such assertion is true. This is classic, nonspecific boilerplate, and violates Rule 34(b)(2)(C) with respect to requests for production/inspection, and Rule 33(b)(4) with respect to interrogatories. Such objections are waived.

3. Defendant “objects” to several requests and interrogatories by stating something to the effect of “Plaintiff’s Definitions and Instructions are not self-executing or independently binding merely because Plaintiff drafted them into written discovery. Discovery is governed by the Federal Rules of Civil Procedure, court orders, and any actual stipulation of the parties.”

It’s not clear what precisely is being objected to here, because Defendant never identifies any specific way in which Plaintiff’s definitions or instructions are ostensibly incompatible with any rule or court order. Such objections fail to comply with the specificity requirements of Rules 33 and 34, and are waived. (Plaintiff also notes that Rules 33 and 34 impose very few requirements on how these discovery requests may be presented, and it’s standard practice to include definitions and instructions in discovery requests.)

4. In many cases, Defendant objects to a discovery request only “to the extent” that some proposition is true, without actually taking a position on the extent to which that proposition is true. In other words, such

"objections" fail to assert that Plaintiff's discovery requests are objectionable *to any extent at all*!

If a statement doesn't assert that a request is objectionable, the statement arguably is not even an objection. But even if such a thing may be called an objection, it certainly isn't compliant with the specificity requirements of either Rule 33 or 34. Such "objections" are waived.

5. Defendant objects to several of Plaintiff's interrogatories as "compound"[2], without elaborating on what makes a compound interrogatory objectionable. This violates the specificity requirement of Rule 33(b)(4), and such objections are waived. (Plaintiff also notes that Rule 33(a)(1) explicitly allows for an interrogatory with "discrete subparts".)

6. All of Defendant's objections fail to "articulate the particular harm that would accrue if [Defendant] were required to respond to the discovery

[2] Actually, there are multiple interrogatories to which Defendant objects *twice* that the interrogatory is "compound". It seems likely that by the time this Motion is concluded, Plaintiff and the Court will have spent more time considering Defendant's objections than Defendant spent writing them.

request”. This puts the objections out of line with the rule in *Saroya* (*Supra* pg. 25). Such objections are invalid and are waived.

Plaintiff contends that every single one of Defendant’s objections to his First and Second Set of Requests for Production, and his First Interrogatories, violates the rules in at least one of the above ways (all objections fall under 6, and additionally all objections fall under at least one of 1-5).

**Defendant’s boilerplate objections are intentionally obstructive:**

In good faith, Plaintiff tried to resolve this issue by warning Defendant that it risked waiver, and offering to allow Defendant to Revise its objections to avoid waiver, even though its discovery deadlines had already passed (see Plaintiff’s June 9 “[Time-sensitive] You're waiving your discovery objections” email).

Not only did Defendant not revise its objections, but it has consistently ignored or refused to discuss the issue of its invalid objections whenever Plaintiff has brought it up. This is despite the fact that Defendant certainly knows its objections fail to comply with the rules.

Even if we assume that, at the start of discovery, Defendant was unfamiliar with Rules 33 and 34's requirements regarding objections: Plaintiff has cited these rules to Defendant several times, and has explained in detail why Defendant's objections don't comply with these rules and are subject to waiver.

Certainly, by the time Defendant served its response to Plaintiff's Second Set of Requests for Production on July 13, Defendant was aware that its objections to Plaintiff's first set were invalid and risked waiver (because Plaintiff had explained this multiple times). Nevertheless, Defendant's objections to Plaintiff's second set are largely identical to its boilerplate objections to Plaintiff's first set.

In other words, Defendant submitted its responses to the second set of requests *knowing* that its objections were impermissible and subject to waiver. It seems that Defendant wrote these boilerplate objections simply to delay discovery, and to force Plaintiff to spend his time and effort in bringing this motion.

**The Court should rule that Defendant's boilerplate objections are waived, and order Defendant to respond without regard to such objections:**

With respect to interrogatories: Under Rule 33(b)(4), "Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." As Plaintiff has shown, Defendant has not properly stated any grounds to object to Plaintiff's interrogatories, and the time to raise new objections has passed. Therefore, Defendant's objections are waived.

With respect to requests for production/inspection: The waiver of objections not timely raised is "well settled" (see e.g. *Phillips* (*Supra* pg. 26)). As Plaintiff has shown, Defendant has not properly stated any objections to Plaintiff's requests for production or inspection, and the time to raise new objections has passed. Therefore, Defendant's objections are waived.

As to the question of good cause: Not only does Defendant not have good cause for its failure to properly object, it's clear that Defendant acted in bad faith with respect to its boilerplate objections.

Because Defendant had notice that its boilerplate objections were impermissible and subject to waiver, and Defendant not only declined the opportunity to correct them, but actually raised *additional* impermissible boilerplate objections after such notice, a finding of bad faith is warranted.

The Court should rule that Defendant's objections are waived, and should use its authority under Fed. R. Civ. P. 37(a)(3)(B) to compel Defendant to re-respond to Plaintiff's discovery requests without regard to its invalid objections.

**ISSUE 5 - CLAIMS OF PRIVILEGE: FACTS**

- For a timeline of service and responses to Plaintiff's First and Second Sets of Production and First Interrogatories, see "ISSUE 2 - WITHHOLDING OF DISCOVERY IN ABSENCE OF PROTECTIVE ORDER: FACTS" above.
- On June 7, 2026, Plaintiff emailed Defendant's counsel, asking: "could you describe the nature of any documents that have been withheld on the basis of privilege?" (Exhibit 17.)
- On June 9, 2026, Plaintiff sent an email to Defendant's counsel with the subject "[Time-sensitive] Failure to produce a privilege log may waive privilege". The email stated, in detail, the potential risk that Defendant may waive privilege by failing to produce a privilege log. (Exhibit 19.)
- On July 8 (i.e. one month later), Defendant's counsel replied to Plaintiff's June 7 email by stating "[Defendant] will produce a privilege

log in the event that any document is being withheld on the basis of privilege that was otherwise not produced in discovery." (Exhibit 17.)

- Defendant has not produced a privilege log (Plaintiff's Declaration ¶ 19).

## ISSUE 5 - CLAIMS OF PRIVILEGE: RULES, PURPOSE, AND CASE LAW

Fed. R. Civ. P. 26(b)(5)(A) governs the withholding of information under a claim of privilege. It states:

> (5) Claiming Privilege or Protecting Trial-Preparation Materials.
>
> > (A) Information Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> >
> > > (i) expressly make the claim; and
> > >
> > > (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing

> information itself privileged or protected, will enable other parties to assess the claim.

Adherence to this rule ensures that parties have the information necessary to resolve privilege disputes among themselves, without resorting to motion practice.

The advisory committee notes state that failure to follow this rule may waive privilege: “A party must notify other parties if it is withholding materials otherwise subject to disclosure under the rule or pursuant to a discovery request because it is asserting a claim of privilege or work-product protection. To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection.” Rule 26(b) advisory committee note (1993 amend.).

Courts are generally reluctant to resort to waiver of privilege, but it’s warranted “for cases of unjustified delay, inexcusable conduct, and bad faith.” *Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 426 (D. Minn. 2012).

The following factors may be used in deciding whether privilege should be waived: “(1) the length of the delay; (2) the reason for the delay; (3)

whether the responding party acted in bad faith or engaged in any dilatory action; (4) whether the requesting party has been prejudiced; (5) whether the request was overly burdensome; and (6) whether waiver would impose a harsh result on the defaulting party." *Id.*

## ISSUE 5 - CLAIMS OF PRIVILEGE: ARGUMENT

**Defendant's objections "to the extent" that Plaintiff's requests call for privileged information are invalid:**

Defendant's objections to Plaintiff's Requests for Production nos. 1, 2, 3, 5, 8, 11, 12, and 13 object "to the extent" that the request "seeks information or materials protected by the attorney-client privilege, [sic] the work-product doctrine…"[3].

However, none of Defendant's responses to these requests actually assert "the extent" to which the requests seek privileged information, and therefore, they don't assert that the requests seek privileged information. Thus, these statements fail to "expressly make the claim" of privilege *at all*, and so don't comply with Rule 26(b)(5)(A)(i).

[3] The same typo is present in all of these objections, across the responses to both sets of production.

And even if these statements did expressly make the claim of privilege, Defendant still has not complied with Rule 26(b)(5)(A)(ii) with respect to these requests: Not only has Defendant not "describe[d] the nature of the documents, communications, or tangible things not produced or disclosed", but Defendant has not even made it clear if it's withholding *any* production for these requests on the basis of privilege.

**Defendant's claim of privilege in response to Request for Production no. 7 is insufficiently detailed:**

In response to Plaintiff's Request for Production no. 7, Defendant states that it's "withholding email correspondence on the basis of attorney-client privilege".

While this statement at least expressly makes the claim of privilege, it still doesn't "describe the nature of the … communications … not produced … in a manner that … enable[s] [Plaintiff] to assess the claim".

Merely describing withheld material as "email correspondence", with no further elaboration, would fail to meet the requirement of Rule 26(b)(5)(A)(ii) in response to any request. But it's *particularly* insufficient in the context of this 7th request for production.

This request for production concerns activities that Defendant may have undertaken in response to Plaintiff's 2023-2024 emails to one of Defendant's attorneys, Christopher Boline. In these emails, Plaintiff complained that he was still receiving telemarketing from Defendant, and requested that Defendant stop calling him. Mr. Boline at one point replied to Plaintiff stating "I will discuss with my client and get back to you".

It is likely that Plaintiff's emails to Mr. Boline resulted in the creation of some attorney-client privileged communications between Mr. Boline and his client. However, it's also very plausible that this resulted in some *non-privileged* communications to which Mr. Boline (or another attorney for Defendant) was a party.

For example, if the main purpose of such a communication was not to provide legal advice, attorney-client privilege would not apply, regardless of whether an attorney for Defendant was a party to the communication. Attorney-client privilege applies "only if [a] communication's primary purpose is to gain or provide legal advice." *Cargill, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 21-CV-2563 (JNE/DTS), 2024 WL 2154017, at *3 (D. Minn. Apr. 23, 2024)

Plaintiff anticipated that this request no. 7 would likely raise questions of privilege, and so he stated in the request:

> There may be some dispute as to whether some of the documents responsive to this request are privileged. Defendant is reminded to review the requirements of Fed. R. Civ. P. 26(b)(5)(A). Failure to comply with this rule "may be viewed as a waiver of the privilege or protection", per Rule 26(b) advisory committee note (1993 amend.)

Defendant certainly read this part of Plaintiff's request when composing its response. Defendant's response nevertheless does not comply with Rule 26(b)(5)(A)(ii).

This noncompliance with the rule was clearly intentional. To conclude that this was not intentional, one would have to believe both:

- Defendant's counsel was unfamiliar with the proper procedure for claiming privilege when he began responding to this request; ***and***
- Defendant's counsel either:
    - Failed to read the above-quoted paragraph in the request, or
    - Read the above-quoted paragraph in the request, but declined to familiarize himself with Rule 26(b)(5)(A), despite this paragraph's stated risk of the waiver of privilege.

The idea that this was unintentional is even more implausible in light of the fact that Defendant served its response to this 7th request for production more than a month *after* Plaintiff sent his June 9 "[Time-sensitive] Failure to produce a privilege log may waive privilege" email to Defendant.

**Defendant's claims of privilege in response to Plaintiff's interrogatories are insufficiently detailed, and invalid:**

Defendant's responses to Plaintiff's interrogatories nos. 1, 2, 3, 4, 5, 6, 7, 8, 11, 18, and 19 assert that the interrogatory seeks privileged information. However, these assertions of privilege are merely short, conclusory statements that attorney-client or work product privilege apply; none of them identify *why* their respective interrogatories supposedly warrant the protection of privilege.

Therefore, these claims of privilege don't provide sufficient information for Plaintiff to assess the claims.

As conclusory statements, these objections of privilege also fail to comply with the specificity requirement of Rule 33(b)(4). (Like any other objection, an objection to an interrogatory on the basis of privilege must still comply with Rule 33(b)(4), not just Rule 26(b)(5)).

**Waiver of privilege is warranted here:**

Defendant's conduct in regard to its claims (or implications) of privilege has been inexcusable and in bad faith:

- It has acknowledged the need to produce a privilege log, but still has not done so;
- It *intentionally* violated Rule 26(b)(5)(A)(ii) with respect to Interrogatory 7;
- It has obstructed Plaintiff's attempts to resolve these privilege issues, including by refusing to meet and confer with Plaintiff for roughly 2 months after these issues first arose, and by refusing to discuss its objections with Plaintiff once the parties did finally meet and confer.

Furthermore, Plaintiff repeatedly warned Defendant (with citations to rule, committee notes, and case law) that it risked waiving privilege if it didn't comply with Rule 26(b)(5)(A). Defendant has had ample time to avoid waiver, but has taken no actions to correct its noncompliance.

With respect to all claims of privilege relating to Plaintiff's discovery requests, besides those relating to Plaintiff's 7th Request for Production, the Court should rule that Defendant's privilege is waived, and should use its authority under Fed. R. Civ. P. 37(a)(3)(B) to compel discovery responses without regard to the waived privilege.

With respect to Defendant's claims of privilege in response to the 7th RFP: Plaintiff contends that in light of Defendant's bad faith conduct, waiver of privilege is warranted here, even if the waiver would impose a "harsh result" on Defendant. However, Plaintiff acknowledges that out of all his requests, this one is the most likely to have otherwise responsive, but genuinely privileged documents whose production to Plaintiff would meaningfully harm Defendant's interests in this litigation. For this reason, Plaintiff would not oppose an *in camera* review of any ostensibly privileged documents responsive to RFP 7, so that the Court may determine the "harsh[ness]" of the result that this waiver would impose on Defendant.

Nevertheless, Plaintiff requests that the Court rule Defendant has waived privilege with respect to this 7th RFP as well, and that it use its authority under Fed. R. Civ. P. 37(a)(3)(B) to compel a response without regard to the waived privilege.

## ISSUE 6 - COOPERATION BETWEEN THE PARTIES

Defendant's counsel is obligated to act in good faith, cooperate with Plaintiff to expedite this litigation consistent with the interests of Defendant, advance only nonfrivolous arguments, concede points where no nonfrivolous argument against the point exists, correct any false statements

of fact or law, and cooperate in discovery (per e.g. Minnesota Rules of Professional Conduct 3.1, 3.2, 3.3, and 3.4, and Fed. R. Civ. P. 11(b)).

Consistent with these obligations, Defendant's counsel has an implicit duty to cooperate with Plaintiff when Plaintiff requests to schedule a meeting to confer pursuant to Local Rule 7.1(a), and, during such a meeting, to engage in a good faith discussion of the issues.

Over the past few months, Defendant's counsel, Mr. Kasprowicz, repeatedly evaded Plaintiff's requests to meet and confer about the issues raised in the present motion (Plaintiff's Declaration ¶ 20). And when Plaintiff finally conferred with Mr. Kasprowicz on August 6, Mr. Kasprowicz was obstructive, refusing to discuss some issues (Plaintiff's Declaration ¶¶ 18, 21). During this call, Mr. Kasprowicz also repeatedly interrupted and filibustered Plaintiff's attempts to discuss genuine issues, by reading out the entire contents of certain interrogatory requests and responses, and refusing to stop (the text he read out was largely not relevant to the issues being discussed) (Plaintiff's Declaration ¶ 22).

Under its inherent authority, the Court should order Defendant and its counsel to cooperate with Plaintiff in scheduling meetings whenever

Plaintiff requests to confer, and to discuss the issues with Plaintiff in good faith during such meetings.

As argued above, Defendant's counsel already has an implicit obligation to do this. Defendant and its counsel are not harmed by being ordered to do something that they already should do.

## ISSUE 7 - DETERRING FUTURE CONDUCT

**A deterrent is necessary:**

As Plaintiff has shown above, Defendant has knowingly failed to meet its obligations in several aspects of discovery, and has delayed and obstructed Plaintiff's good faith attempts to resolve these discovery issues.

Defendant has already benefited from its bad faith actions, by delaying most meaningful discovery for months, and by forcing Plaintiff to spend his time and effort on resolving Defendant's obstruction, instead of spending that time and effort on actually moving this case along. (Plaintiff believes that, if Defendant had complied with all the relevant discovery rules from the outset, discovery would have proceeded far enough by now to enable summary judgment.)

The Court should impose a penalty on Defendant of a sufficient magnitude to establish that the cost of violating the rules outweighs the benefits. Without such a deterrent, Defendant will continue to have an incentive to violate the rules and obstruct this litigation, likely necessitating more motions to compel[4].

**The ordinary deterrent:**

The main sanction under Rule 37 is the award of expenses and attorney fees. On a granted motion, the imposition of this sanction is presumptively mandatory (see Rule 37(a)(5)(A): "...the court must…"), and only in exceptional circumstances should it not be imposed.

One of the main purposes of the attorney fee award provisions in Rule 37 is to deter parties from obstructing discovery and forcing disputes to court:

- Regarding Rule 37(a)(4), the advisory committee notes on 1970 amendments state: "the rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists. And the potential or actual imposition of expenses is

[4] This is not a hypothetical - Defendant's evasive answers to Plaintiff's interrogatories remain another major discovery issue in this case, which Plaintiff yet hopes to resolve with Defendant without resorting to another motion.

virtually the sole formal sanction in the rules to deter a party from pressing to a court hearing frivolous … objections to discovery."

- "Rule 37(b)'s sanctions for failure to comply with discovery orders, including holding parties and counsel personally liable for expenses, "including attorney's fees," must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 753, 100 S. Ct. 2455, 2457, 65 L. Ed. 2d 488 (1980).

(The latter citation specifically speaks of Rule 37(b), but the same logic fits the other nearly identical attorney fee award provisions elsewhere in Rule 37.)

Ordinarily, Rule 37's provisions for the award of expenses and attorney fees serve as a meaningful monetary penalty and deterrent against abusive discovery practices. However, in the present case, Plaintiff will incur no attorney fees in representing himself in this motion, and likely will incur very few or no expenses. Therefore, the award of fees and expenses in the present motion would not be a meaningful sanction.

This presents a dilemma: This motion warrants a deterrent, but the ordinary deterrent is effectively unavailable.

**Other sanctions available under Rule 37:**

Aside from the award of fees and expenses, several other sanctions are explicitly available as options under Rule 37 (mostly under (b)(2)(A), indirectly via (c)(1)(C) and (d)(3)). However, Plaintiff contends that none of them are a good fit for the deterrent necessary in the present motion.

The main sanctions to consider from Rule 37 would be the various evidentiary sanctions. But Plaintiff believes that evidentiary sanctions would not be a useful deterrent against Defendant's conduct. More specifically, Plaintiff believes Defendant's obstruction of discovery is motivated by an understanding that the facts and law are against Defendant in this case, and that playing fair will consequently lead to a loss for Defendant at trial. If the discoverable evidence already will lead to a loss, then evidentiary sanctions don't actually make the Defendant worse off than it would otherwise be from fulfilling its obligations in discovery, and so can't serve as an effective deterrent.

Seeing no good deterrent options in the remaining sanctions under Rule 37, we must turn to sanctions *not* anticipated by that rule.

Luckily, not only does Rule 37 grant the Court authority to impose sanctions beyond those explicitly listed in the rule (via 37(c)(1)(C)), but case law also recognizes that the Court has inherent authority to impose alternative sanctions, where the sanctions available in the rules fail to be a fitting remedy for a given issue:

> Although a court ordinarily should rely on [rules such as the Federal Rules of Civil Procedure] when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the rules, the court may safely rely on its inherent power if, in its informed discretion, neither the statutes nor the rules are up to the task. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33, 111 S. Ct. 2123, 2126, 115 L. Ed. 2d 27 (1991)

**The Court should use its inherent authority to impose a meaningful monetary penalty to deter further obstruction of discovery:**

Since a deterrent is necessary, and the usual deterrent granted by the rules is unavailable: Plaintiff proposes that in lieu of an attorney fee award, the Court monetarily sanction Defendant and/or its counsel, Mr. Kasprowicz, in an amount commensurate to what an attorney would have billed in drafting and arguing this motion.

As established above, an attorney fee award is the usual deterrent against this sort of bad faith behavior, and it's awarded presumptively. As such, there can be no contention that a monetary penalty of an equivalent amount is unfair (since under the rules, Defendant or its counsel would have had to pay the same amount as a fee award in typical circumstances, anyway). And a monetary penalty in an amount equivalent to an attorney fee award should have the same deterrent value as an *actual* attorney fee award (it costs just as much either way).

**Who should receive the money?**

The most important aspect of this sanction is its deterrent value, which is the same regardless of who receives the money. That said, the money has to go to *someone*.

The two obvious options are: pay to Plaintiff, or pay to Court.

Plaintiff humbly requests that such a penalty be paid to him. While Plaintiff is not an attorney, and he doesn't incur an hourly bill in representing himself, his time still has value, and he has expended *significant* time and effort to prepare this motion:

- Plaintiff has spent at least 60 hours researching and drafting this motion and memorandum (Plaintiff's Declaration ¶ 23).

- Plaintiff anticipates that he will additionally spend the bulk of one day preparing for the hearing (Plaintiff's Declaration ¶ 24).
- Plaintiff has used no generative AI in preparing any of the materials for this motion[5]; he has written everything himself (Plaintiff's Declaration ¶ 25).

Additionally, Plaintiff has already used one day of paid time off from his job to work on this motion, and will have to take more time off for the hearing (Plaintiff's Declaration ¶ 26).

This significant time expenditure and use of paid time off was only necessary because of Defendant's bad faith actions. If Defendant already must be sanctioned monetarily to establish a deterrent (as established above), there is justice in using that money to compensate Plaintiff for wasting a significant amount of his time.

Again, though: What's really important about this sanction is its deterrent value, not where the money goes. If the Court decides to make the sanction payable to Court, that would also be just and reasonable.

---

[5] Nor, in fact, has Plaintiff used generative AI for anything else in this action.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion.

Dated:
8/16/2026

s/Alexander von Brandenfels
Plaintiff

3116 Harriet Ave, Apt 2, Minneapolis, MN, 55408
Tel.: (612) 405-8389
Email: alex.brandenfels@gmail.com