**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Alexander von Brandenfels,<br>Plaintiff,<br><br>v.<br><br>LTL LED, LLC,<br>d/b/a WOLF RIVER ELECTRIC<br>Defendant. | Case No.: 0:26-cv-01559-ECT/DTS |

# PLAINTIFF VON BRANDENFELS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

## INTRODUCTION

The Court should deny Defendant's motion for the following reasons.

## LACK OF EVIDENCE

**1. Lack of evidence of the contents of written materials:**

Defendant's memorandum makes several arguments that are founded on factual contentions regarding the contents of written documents; including Plaintiff's discovery requests, Defendant's discovery responses, email communications between the parties.

Federal Rules of Evidence 1001-1008 provide the standards for evidence of the contents of written documents. Rules 1002 and 1003 provide the typical method of proving the contents of a written document: An original or duplicate copy of the document must be offered as proof.

Defendant, however, has not offered original or duplicate copies of any of the written documents whose contents it ostensibly relies on in making its arguments. Rather, in support of its assertions as to the contents of the various written documents, Defendant's motion offers only declarations of its counsel and its CEO. These declarations are not admissible evidence for the purpose of proving the content of Plaintiff's discovery requests, nor any of the other written documents whose contents Defendant attempts to factually rely on in its arguments, because none of the limited exceptions to Rules 1002-1003 apply.

**2. Lack of evidence, generally**

The only evidence that Defendant has introduced in favor of its motion are two declarations. These declarations are light on facts, and even lighter on *relevant* facts.

Many of the paragraphs in Defendant’s declarations are statements of subjective opinions, value judgments, and/or conclusions. For example, Marchenko asserts that Defendant “has invested substantial time, money, personnel, experience, and other resources developing and refining its processes” (Marchenko Declaration ¶ 3). How much investment into such things is required to be considered “substantial”? This is an opinion, and Defendant has introduced no evidence of specific facts that might justify this opinion. Has it invested ten thousand dollars? One billion dollars? Six months of person-hours? Twenty years of person-hours? No evidence in the record lets Plaintiff or the Court even make an informed guess. We are left to take it on faith that the investment was “substantial”.

More egregiously, Defendant has introduced no proper evidence of the harms it ostensibly might suffer by the disclosure of the information it seeks to protect. In its memorandum (pg. 14), Defendant asserts that “the potential harm from unrestricted disclosure is concrete”. However, for evidence in support of its assertion of harm, Defendant offers only paragraphs 16-19 and 23 from Marchenko’s Declaration. These paragraphs in Marchenko’s Declaration are not even statements of fact, let alone evidence that supports Defendant’s assertions.

Paragraph 19 is explicitly a statement of opinion ("In my business judgement…"). Defendant offers no evidence that this opinion is true.

Paragraphs 16-18 and 23 of Marchenko's Declaration are speculative, merely asserting that something "could" happen, without expressing or being supported by any specific facts that would let Plaintiff or the Court form an opinion about how *likely* such things would be to happen. These do not, as Defendant asserts, show *concrete* risks of disclosure.

If Defendant's counsel eats a banana on his way into the courthouse to attend the hearing for this motion, he "could" accidentally drop the banana peel on the ground. And Plaintiff "could", when approaching the courthouse himself, slip on that banana peel, hit his head, and die. This possibility undeniably *exists*. But this of course does not mean that there is a *meaningful* risk of this occurring if Defendant's counsel eats a banana on the way into the courthouse. Merely asserting that an event "could" happen, even if such assertion is made under penalty of perjury, does not provide *evidence* that there is a concrete risk of that event happening.

Beyond failing to serve as evidence that there is a meaningful probability of any of these events happening, paragraphs 16-18 and 23 of Marchenko's declaration also do not establish the *magnitude of harm* that would occur if these events happened. Would Defendant's competitors actually find the disclosed information useful? Would disclosure meaningfully impact Defendant's ability to compete in the market? Would Defendant lose 50% of its market share to competitors? Lose 0.01% market share? Go bankrupt due to losing all of its competitive advantage? There is no evidence in the record that any harm caused by disclosure would be meaningful in magnitude.

Let us take a step even farther back and consider: Has Defendant introduced any evidence to establish that any of its business practices are meaningfully different from those practices employed by its competitors? No, it has not. And if business practices such as Defendant's are already well-known and commonly employed by Defendant's competitors in its industry, then it suffers no harm from disclosure of its practices to its competitors.

Plaintiff contends now that all of Defendant's competitors already employ

systems, practices, and procedures that are indistinguishable from the ones Defendant seeks in this motion to protect from disclosure. In favor of the truth of this contention, Plaintiff offers no evidence. This is precisely as much evidence as Defendant has offered to the contrary.

Unfortunately for Defendant, *it* bears the burden of showing that the information it seeks to protect from disclosure is not already well-known. In the absence of any evidence that Defendant operates any differently from its competitors, there can be no contention that disclosure of its business practices would cause it any harm at all, and its motion must be denied.

> Fed.R.Civ.P. 26(c) requires that "good cause" be shown for a protective order to be issued. The burden is therefore upon the movant to show the necessity of its issuance, which contemplates "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements"

*Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973)

As established above, Defendant's stereotyped and conclusory statements are insufficient to show the necessity of its desired protective order.

**DEFENDANT’S MOTION IS UNTIMELY**

(Plaintiff presents here only a brief argument that Defendant’s motion is untimely. Plaintiff has already more extensively made this argument in his memorandum (Doc. no. 29) in support of his motion to compel (Doc no. 27), which is scheduled for the same hearing as this motion by Defendant.)

A motion for a protective order should be made before discovery is due. See:

- *Rotoworks Int'l Ltd. v. Grassworks USA, Inc.*, No. CIV. 07-05009, 2007 WL 1364911, at *1 (W.D. Ark. May 8, 2007), denying defendants’ motion for a protective order because “defendants failed to seek a protective order for the documents outlined in their current motion within thirty (30) days of plaintiff's service of its requests for production”;

- “Motions [for protective orders] under Rule 26(c) must be served before the date set for production.” *United States v. Int'l Bus. Machines Corp.*, 70 F.R.D. 700, 701 (S.D.N.Y. 1976)

For all discovery requests that Plaintiff has made at this time, Defendant's responses to those requests were due roughly 2-3 months before Defendant filed its motion for a protective order (see Exhibits 1-6 in Plaintiff's Declaration at Doc. no. 30; time to respond was governed by Rules 33 and 34).

Accordingly, the Court should reject Defendant's motion as untimely.

## CASE LAW

Defendant presents some case law ostensibly in support of its arguments. Plaintiff addresses each below.

### Seattle Times

In *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), petitioners appealed a protective order (which had been issued pursuant to "[Washington] state discovery Rules modeled on the Federal Rules of Civil Procedure"), arguing that the restrictions imposed by the protective order violated the First Amendment. The Supreme Court held that the protective order did not violate the First Amendment.

This holding is irrelevant to the instant motion, because Plaintiff does not argue that Defendant's proposed protective order violates the First Amendment.

Furthermore, Defendant's quotation of *Seattle Times* is misleading: Defendant quotes that "Rule 26(c) confers broad discretion…", implying that the Supreme Court speaks of the *Federal* Rule 26(c). However, the quoted text is actually in reference to the *Washington* Rules. Footnote 7 of *Seattle Times* contains the text of this Washington Rule 26(c), and it differs from the present-day Federal Rule 26(c) under which Defendant makes its motion.

Defendant has not shown (or even attempted to explicitly argue) that interpretation of this Washington Rule 26(c) should be persuasive (let alone binding) when considering the Federal Rule 26(c) with which we are presently concerned. While the subjects of these Washington and Federal rules are the same, their texts differ, and any direct application of case law from one onto the other deserves at least a cursory examination of whether such application is warranted; Defendant has presented none.

**Carpenter**

In *Carpenter v. United States*, 484 U.S. 19 (1987), the question was whether the confidential schedule and contents of unpublished newspaper columns constituted “property” for the purposes of 18 U.S.C. §§ 1341 and 1343. This is irrelevant to Defendant’s motion, because nothing in its motion requires a determination of whether something is “property”.

**Bussing**

In *Bussing v. COR Clearing, LLC*, No. 8:12CV238, 2015 WL 4077993 (D. Neb. July 6, 2015), the court *denied* the movant-defendant’s motion for a protective order, with the exception of two categories of documents: “[c]lient lists and confidential settlement agreements with third parties”.

In the present case, Plaintiff has not specifically sought either of these two categories of documents from Defendant, nor has Defendant contended that documents of these categories are responsive to any of Plaintiff’s discovery requests.

As for the remaining categories of documents in Bussing, for which the court denied a protective order, the court’s reasoning for the denial has many parallels with the circumstances in the instant motion.

The court in Bussing stated that: “To establish good cause, that party opposing disclosure must submit a particular and specific demonstration of

fact, as distinguished from stereotyped and conclusory statements." (internal quotations omitted). Much like our Defendant now, the defendant in Bussing failed to submit evidence of any specific facts that warranted a protective order:

> [T]he evidence discusses these categories of discovery, if at all, in very broad terms with not precise explanation of what the defendants seek to protect. For example, … business, strategic, and sales and marketing plans are broadly identified as needing … protection. But the defendants have submitted no evidence specifically describing any of the documents within these categories, whether and why all documents within these broad descriptions must be protected…, the measures the defendants have taken to maintain the confidential status of these documents, whether the documents are currently available from another source, the extent of defendants' company-specific effort in creating any formulas, surveys, or business strategies underlying the documents, or how their release to the plaintiff will harm the defendants. The defendants' conclusory statements and arguments in their briefs cannot replace the requisite factual showing for granting [a] … protective order.

Let us compare the movant-defendant in Bussing to our Defendant in the instant motion:

- Defendant asserts the need to protect very broad categories of discovery, such as information concerning how it “combines its software, CRM systems, lead information, consent information, workflows, vendors, and internal procedures to acquire and manage leads and determine which prospective customers should be contacted” (Defendant’s memorandum pgs. 13-14). This broad description essentially encompasses every aspect of its sales and marketing activities.
- Defendant has submitted no evidence specifically describing any of the documents it seeks to protect.
- Defendant has submitted no evidence as to why the information it seeks to protect must be protected.
- Defendant has submitted no evidence that the information it seeks to protect is unavailable from another source (e.g., evidence that its ostensibly secret business practices are meaningfully different from the practices of its competitors; or are meaningfully different from what is taught in business school, or in online sales trainings or courses).

- Defendant has submitted no evidence of the extent of its effort or investment in creating or developing any business strategies that underlie the documents it seeks to protect. (It has only offered a statement of opinion that its investment was “substantial”.)
- Defendant has submitted no evidence for how, specifically, it would be harmed by the dissemination of the information it seeks to protect, nor the magnitude of such harm if it were to occur.
- Defendant has not even submitted admissible evidence that Plaintiff’s discovery requests actually seek any of the things that Defendant wishes to protect.

For the same reasons as in Bussing, the Court should deny Defendant’s motion here.

The court in Bussing also expressed some displeasure with the movant-defendant’s actions in that case, noting:

> [I]t appears Plaintiff repeatedly requested a detailed explanation of the documents and case law so the parties could craft an appropriate protective order without court intervention, but that information was not forthcoming. And as to nearly all the documents they seek to protect with an Attorney Eyes Only designation, the defendants failed

> to file evidence before this court describing with any particularity the documents they want to withhold from [the plaintiff's] personal review.

The above defendant's behavior in Bussing is quite similar to Defendant's behavior in the present case, both with respect to the issue of a protective order, and the issues raised by Plaintiff's pending motion to compel[1].

On the issue of a protective order, Plaintiff requested not only the text of a proposed protective order from Defendant (which it nevertheless failed to provide until weeks *after* most of its discovery responses and production were due), but also the specific nature of the documents or information it sought to protect, and the specific harm that it feared from dissemination of such.

In fact, Defendant repeatedly avoided discussing any of Plaintiff's questions or stated concerns with a protective order. See e.g. Exhibit 11 to Plaintiff's Declaration at Doc. no. 30 (that exhibit's whole email conversation is relevant, but note especially that Plaintiff writes on pg. 3: "maybe there's an unavoidable, legitimate reason for a protective order that you just haven't mentioned yet. Feel free to make the argument."). Similarly to Bussing, such an argument was "not forthcoming".

[1] Doc. no. 27, scheduled to be heard on the same day as this one.

The only subject in relation to the protective order that Defendant seemed interested in discussing was whether Plaintiff had any issues with the specific language of the protective order it had proposed, despite Plaintiff's statement that "it's premature to get into the specific language of the order, when you haven't really even tried to justify the necessity of one in the first place, despite me asking you to" (same Exhibit 11, pg. 6).

**Remington**

In *In re Remington Arms Co., Inc.* 952 F.2d 1029 (8th Cir. 1991), Remington sought relief from a district court order for Remington to produce certain documents. Remington argued that the district court hadn't afforded it a proper opportunity to show cause to protect the documents.

Remington also argued that the documents contained "formative research and development files" for product designs that were "so novel [that] premature disclosure [would] seriously affect its ability to obtain patents on new concepts and designs". This is a highly specific argument of what harm would occur from the dissemination of the documents, which starkly contrasts with our present Defendant's vague, conclusory contentions that it "could" suffer some harm if some items ostensibly sought by Plaintiff were disseminated. Defendant's comparison to Remington is unwarranted.

Regardless, the Court of Appeals didn't even rule on whether Remington's documents were trade secrets, or whether they should be protected by a protective order ("[o]n remand, the district court may or may not find that the NBAR documents are trade secrets"). Rather, it merely held that the district court should have given Remington "the opportunity to demonstrate that the documents contain trade secrets and that disclosure would be harmful", and that failure to do so was an abuse of discretion.

In the present case, Defendant has had ample opportunity to demonstrate that the documents sought by Plaintiff "contain trade secrets and that disclosure would be harmful". It has not done so.

**Ch Bus Sales**

Defendant's brief cites *Ch Bus Sales, Inc. v. Geiger*, No. 18-CV-2444 (SRN/KMM), 2019 WL 1282110, at *8 (D. Minn. Mar. 20, 2019).

Specifically (and strangely), Defendant cites Ch Bus Sales to establish how the term "trade secret" "is defined in" the Minnesota Uniform Trade Secrets Act ("MUTSA"). (Properly speaking, it's not even true that Defendant's quotation from Ch Bus Sales is how the term trade secret "is defined in" the MUTSA: Defendant quotes a *judicial interpretation* of the *elements* of the statutory definition; the actual text of the definition in the statute is different.)

Ch Bus Sales does not concern protective orders, nor even Rule 26 more broadly, in any way. And Defendant presents no argument as to why the definition of “trade secret” in the MUTSA is relevant to determining whether something is a “trade secret” warranting a protective order under Rule 26(c).

But, in any event, even if the MUTSA’s definition were the binding one for the purposes of Rule 26(c): To qualify as a “trade secret” under the MUTSA, information *must not be* “readily ascertainable by proper means by[] other persons” (Minn. Stat. § 325C.01, subdiv. 5). But Defendant has not introduced evidence to show (nor even explicitly argued that) the information Defendant seeks to protect is not “readily ascertainable by proper means by[] other persons”. Therefore, Defendant has failed to argue that anything it seeks to protect is a “trade secret” under MUTSA.

**American Achievement Corp.**

Defendant cites *American Achievement Corp. v. Jostens, Inc.*, 622 F. Supp. 3d 749, 764 (D. Minn. 2022). Again, this is a MUTSA case that has nothing to do with protective orders or Rule 26. Again, Defendant has not argued why MUTSA is relevant to its motion.

To the extent that Defendant *does* implicitly argue that American Achievement Corp is relevant to its present motion, that argument also fails for another reason: In American Achievement Corp, before the court was a motion to dismiss, for which courts must look at whether the pleader made a "short and plain statement of the claim showing that the pleader is entitled to relief", based merely on the pleadings and not evidence. In contrast, the instant motion is one for a protective order, in which the movant must use evidence to show good cause for the order sought. Since these two types of motions apply two very different standards, case law from one should not be blindly applied when evaluating the merits of the other. Defendant has not argued for why it would be appropriate to do so here. (Note also, the court in American Achievement Corp granted the motion to dismiss in part, so it wasn't as clear cut as Defendant suggests in pg. 12 of its memorandum.)

**Conseco Financial Servicing Corp**

Defendant cites *Conseco Financial Servicing Corp. v. North American Mortgage Co.*, 381 F.3d 811 (8th Cir. 2004). Specifically, Defendant states that the court "held that lead sheets generated through a proprietary computer program and confidential information contained in customer files constituted trade secrets". What Defendant does not mention is that in

Conseco, the court specifically was considering whether information constituted a “trade secret” under the *Missouri* Uniform Trade Secrets Act.

Much like with the Minnesota UTSA, Defendant has presented no argument that the definition of “trade secret” under the Missouri UTSA should control or be persuasive on the question of whether information is a “trade secret” that warrants a protective order under Rule 26(c).

But even assuming that it should: The facts in Conseco are distinguishable from the facts in the instant motion, because in Conseco, the trade secrets related to a *proprietary* computer program. The proprietary nature of the program is the explicitly the court’s justification for its holding (emphasis added):

> We agree that both the lead sheets and the information contained in these customer files constitute trade secrets under the act. The lead sheets are a product of a specialized-and apparently quite effective-computer program that was *uniquely Conseco's*.

Defendant asserts without argument that the same reasoning in Conseco somehow applies to how Defendant “combines its software, CRM systems, lead information, consent information, workflows, vendors, and internal

procedures to acquire and manage leads and determine which prospective customers should be contacted".

However, unlike in Conseco, Defendant has not argued (nor introduced evidence showing) that it uses any *proprietary* software, nor that any of the information it seeks to protect is a product of proprietary software.

It's difficult to make any factual assertions about the information Defendant seeks to protect, since its motion and the evidence it has introduced are so light on specific facts, but as best Plaintiff can tell:

1. Defendant uses various publicly available, off-the-shelf software products as part of its sales process, but doesn't use any custom or proprietary software.
2. To the extent that any of Defendant's software is configured to connect to, interact with, or otherwise "talk to" other software used by Defendant, the two software products are *designed* to interoperate in such a way (so, in other words, the idea to connect the two products is readily ascertainable by anyone who considers the functionality of the two software products in relation to each other).

3. To the extent that Defendant's employees or vendors use or interact with its software, it is via publicly available, non-proprietary features of the software (publicly ascertainable).
4. Defendant's lead information is obtained via publicly available, non-proprietary features of nonproprietary software (publicly ascertainable nature), or from vendors with which Defendant does not have an exclusive relationship (vendors' existence not hidden from competitors; nature of vendor's services publicly ascertainable).

The above may or may not be a correct inference by Plaintiff. However, what is true is that the above statements are not *inconsistent* with the facts asserted by Defendant's two declarations (which are the only evidence it has cited in support of its motion). This illustrates just how bare the facts are that Defendant has presented. Even if Defendant *does* have something proprietary going, and such thing warrants a comparison to Conseco, it hasn't introduced *evidence* of such, and without evidence, any argument along these lines fails.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court deny Defendant's motion for a protective order.

Dated:

8/20/2026

s/Alexander von Brandenfels

Plaintiff

3116 Harriet Ave, Apt 2, Minneapolis, MN, 55408
Tel.: (612) 405-8389
Email: alex.brandenfels@gmail.com